# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 3, 2014

Lyle W. Cayce
Clerk

No. 12-60694

LUMINANT GENERATION COMPANY, L.L.C.;
ENERGY FUTURE HOLDINGS CORPORATION,

Petitioners,

versus

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
GINA MCCARTHY, Administrator,
United States Environmental Protection Agency,

Respondents.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Consolidated with
No. 13-60538

LUMINANT GENERATION COMPANY, L.L.C.;
BIG BROWN POWER COMPANY, L.L.C.,

Petitioners,

versus

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY;
GINA MCCARTHY, Administrator,
United States Environmental Protection Agency,

Respondents.

No. 12-60694
No. 13-60538

Petitions for Review of Notices of
the Environmental Protection Agency

———————

Before SMITH, WIENER, and PRADO, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The operators of two power plants filed petitions challenging the legal sufficiency of the notice of violation issued by the Environmental Protection Agency ("EPA") under Section 7413(a) of the Clean Air Act. The EPA filed a second, amended notice of violation and moved to dismiss the petitions for want of jurisdiction. The operators challenged the sufficiency of the second notice. Because the notices were not "final actions" of the EPA, we dismiss the petitions for lack of subject-matter jurisdiction.

I.

Luminant Generation Company, L.L.C. ("Luminant"), owns and operates the Martin Lake Power Plant and operates the Big Brown Power Plant owned by Big Brown Power Company LLC ("Big Brown"). Energy Future Holdings Company ("EFH") is the ultimate corporate parent of Luminant and Big Brown. Both plants have multiple coal-fired units, each connected to turbine generators. Each plant operates pursuant to a Title V permit issued by the State of Texas and approved by the EPA.

In June 2008, the EPA began sending Luminant requests under 42 U.S.C. § 7414(a) to determine compliance with the Clean Air Act and its implementing regulations. In July 2012, the EPA issued a section 7413(a) notice of violation ("2012 NOV") to Luminant and EFH claiming that (a) during

No. 12-60694
No. 13-60538

scheduled outages from 2005 to 2010, Luminant completed substantial capital projects at the Martin Lake and Big Brown Power Plants; (b) the projects involved physical or operational changes to certain emission units; and (c) the changes increased emissions of sulfur dioxide and nitrogen dioxide. The EPA asserted that, as a result of that activity, Luminant and EFH violated (1) the Act's Prevention of Significant Deterioration ("PSD") provisions, (2) Texas's State Implementation Plan ("SIP"), (3) Texas's PSD provisions, (4) Title V of the Act, and (5) Texas's Title V program.

Luminant petitions for review of the 2012 NOV, maintaining that it did not sufficiently comply with 42 U.S.C. § 7413(a)(1) because it (1) contained only boilerplate legal conclusions, (2) found violations of the Act's Title V program, and (3) was issued to EFH in spite of making no finding that EFH had directed the emissions-related activities at the plants. The EPA has moved to dismiss on the ground that a notice of violation is not "final action" as required by 42 U.S.C. § 7607(b)(1).

Luminant filed its opening brief in June 2013; instead of filing a brief, the EPA, in July, issued a second notice of violation (the "2013 NOV") to Luminant and Big Brown. In August, the United States filed a federal complaint against Luminant Generation and Big Brown in the Northern District of Texas.[1] The 2013 NOV purports to "amend" the 2012 NOV[2] and alleges only violations of the Act's PSD provisions and Texas's PSD provisions. Luminant petitioned for review of the 2013 NOV, again challenging the legal sufficiency

---

[1] The complaint alleges violations of (1) the PSD program and the Texas SIP, (2) Title V, its implementing regulations, and Texas's operating permit program, and (3) 42 U.S.C. § 7414(a). The defendants moved to dismiss, arguing *inter alia* that the EPA "fail[ed] to provide the required notice to the State." The district court has stayed the case awaiting resolution from this court. *See United States v. Luminant Generation Co. LLC*, No. 3:13-CV-03236-K (N.D. Tex. Jan. 10, 2014).

[2] In its brief, the EPA repeats its view that the 2013 NOV supersedes the 2012 NOV.

No. 12-60694
No. 13-60538

of the notice. The EPA again moved to dismiss, suggesting that this court lacks subject-matter jurisdiction. In the alternative, the EPA maintains that the notices satisfy 42 U.S.C. § 7413(a)(1). We consolidated the two cases for hearing and determination.

## II.

For this court to have subject-matter jurisdiction, the challenged agency action must have been a "final action."[3] That is, if the EPA did not undertake final action when it issued the two section 7413(a) notices, we have no jurisdiction over the petitions.

"Final action" under section 7607(b)(1) has the same meaning as "final agency action" under the Administrative Procedure Act ("APA"). *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001). Therefore, just as under the APA, two conditions must be met: "First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."[4]

The EPA has consistently maintained that the notices lack finality under either prong.[5] First, the EPA urges that "[t]he Notices here—which had to

---

[3] *See* 42 U.S.C. § 7607(b)(1) (2012) ("A petition for review of . . . any other *final action* of the Administrator under this chapter . . . may be filed only in the United States Court of Appeals for the appropriate circuit." (emphasis added)). If a party does not challenge final action in a court of appeals, it cannot then challenge it in a subsequent enforcement proceeding. *See* 42 U.S.C. § 7607(b)(2) (2012).

[4] *Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 755 (5th Cir. 2011) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

[5] *See Administrative Enforcement Actions: Notice of Violation and Administrative Orders*, in CLEAN AIR ACT COMPLIANCE/ENFORCEMENT GUIDANCE MANUAL 6-3 (1986), *available at* http://envinfo.com/caain/enforcement/caad117.html ("EPA has consistently

precede initiation of administrative or judicial enforcement action—similarly reflect a threshold allegation that violations of the Texas SIP have occurred." Second, EPA asserts that "Luminant did not become any more or less compliant with the [Act] or the Texas SIP simply because EPA served notice of its violation findings in advance of an enforcement action. . . . [O]nly continued prosecution of the enforcement action and the District Court's final judgment may have legal consequences for Luminant." Accordingly, the EPA contends that "like the Third, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits, this Court should, in assessing finality, recognize that CAA notices of violation are advisory, preliminary, and non-binding."

As to the first prong, Luminant[6] highlights two facts: (1) The EPA issued the notice only after investigating the claims for more than a decade; and (2) the EPA does not offer "any avenue of further agency review" for Luminant to challenge its decision. As to the second prong, to demonstrate that legal consequences flow from the notice itself, Luminant asserts that "separate penalties can and [according to the EPA] should be imposed as a result of a [NOV]." Luminant concedes that its position would create a circuit split but believes *Harrison v. PPG Industries, Inc.*, 446 U.S. 578 (1980), and *Sackett v. EPA*, 132 S. Ct. 1367 (2012), require us to recognize jurisdiction.

We disagree and conclude that the EPA does not undertake final action when it issues a section 7413(a) notice of violation. First, issuing a notice does not commit the EPA to any particular course of action. The statute makes clear the intermediate, inconclusive nature of issuing a notice. After giving notice and waiting thirty days, the EPA *may* "issue an order," "issue an

---

maintained that the NOV is not a final agency action.").

[6] We refer to the petitioners as Luminant.

No. 12-60694
No. 13-60538

administrative penalty" after a formal administrative hearing, or "bring a civil action." 42 U.S.C. § 7413(a)(1) (2012). Alternatively, the EPA could choose to withdraw or amend the notice or take no further action. Issuing notice, therefore, does not end the EPA's decisionmaking: It still must make further significant decisions even if it does not confer on Luminant the ability to influence those decisions. It similarly does not matter that it took the EPA twelve years to file notice. "[The agency's] initial 'finding' marks only the beginning of a process designed to test the accuracy of the agency's initial conclusions." *Sierra Club v. EPA*, 557 F.3d 401, 408 (6th Cir. 2009).

Second, a notice does not itself determine Luminant's rights or obligations, and no legal consequences flow from the issuance of the notice. The Clean Air Act and the Texas SIP, not the notices, set forth Luminant's rights and obligations.[7] As to this litigation, adverse legal consequences will flow only if the district court determines that Luminant violated the Act or the SIP. In other words, if the EPA issued notice and then took no further action, Luminant would have no new legal obligation imposed on it and would have lost no right it otherwise enjoyed.

Third, although Luminant contends notices should be treated the same as orders, section 7413 treats these as distinct types of agency action. One, an agency must give notice before issuing an order, demonstrating the interlocutory nature of notices. Even if an agency gives a notice, however, it need not

---

[7] *See Peoples Nat. Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333, 337 (5th Cir. 2004) ("[A] non-final agency order is one that does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." (citation and internal quotation marks omitted)); *AT&T Co. v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001) ("[The agency's] decision must have inflicted an actual, concrete injury upon the party seeking judicial review. Such an injury typically is not caused when an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party." (citation and internal quotation marks omitted)).

seek an order. Two, although the agency must allow the subject of the order "an opportunity to confer with the Administrator concerning the alleged violation," § 7413(a)(4), the EPA does not need to confer with the party before issuing notice. Three, although orders must be "compl[ied] with . . . as expeditiously as practicable," *id.*, nothing in the Clean Air Act requires a regulated entity to "comply" with a notice. In fact, it makes no sense to say that an entity must comply with a notice or that it has violated a notice. Finally, though violating a compliance order may result in double penalties (for violating the Act and for violating the order), no authority suggests that a court may assess double penalties for "violating" a notice.[8]  Therefore, despite the fact that orders may be final action, notices of violations do not share the finality of orders.

Fourth, contrary to Luminant's suggestion, neither *PPG Industries* nor *Sackett* compels a contrary result. In *PPG Industries*, a chemical manufacturing company wished to construct a new power generating facility that would be equipped with "two gas turbine generators, two 'waste-heat' boilers, and a turbogenerator." *PPG Indus.*, 446 U.S. at 582. The EPA requested the company submit information on whether the waste-heat boilers should be consider "new sources." Once it did, the EPA responded with a letter "conclud[ing] that the waste-heat boilers were, indeed, subject to the 'new source' standards." The parties agreed that the decision was final action but disagreed as to

---

[8] Luminant supports its contrary position only by claiming the EPA took that stance in another case, *United States v. Louisiana Generating*, No. 3:09cv100 (M.D. La.). The EPA does not in fact appear to have taken that stance in that case. And Luminant has not pointed to any statutory provision or caselaw that indicates the EPA can impose penalties for "violating" a notice. The relevant statutory provision, section 7413(b), does not provide for civil penalties for violating a notice.

whether it was "any other" final action.[9]  The Court addressed only the scope of "any other," construing those terms broadly.[10]  *PPG Industries*, therefore, does not provide any guidance as to whether a notice of violation constitutes "final action."[11]

*Sackett* similarly does not help Luminant.  There, the EPA issued a *compliance order* under § 309 of the Clean Water Act.  *See Sackett*, 132 S. Ct. at 1371–72.  Applying *Bennett*, the Court determined the order to be final action: (1) "By reason of the order, the Sacketts have the legal obligation to restore their property . . . .  Also, legal consequences . . . flow from issuance of the order. . . .  [T]he order exposes the Sacketts to double penalties in a future enforcement proceeding."  *Id.* (citations and internal quotation marks omitted); and (2) "The issuance of the compliance order also marks the consummation of the agency's decisionmaking process.  As the Sacketts learned when they unsuccessfully sought a hearing, the Findings and Conclusions that the compliance order contained were not subject to further agency review."  *Id.* at 1372 (citations and internal quotation marks omitted).  A notice of violation does not have the finality of the order in *Sackett*.  Issuing a notice of violation does not create any legal obligation, alter any rights, or result in any legal consequences

---

[9] *PPG Indus.*, 446 U.S. at 586 ("The controversy thus is not about whether the Administrator's decision was 'final,' but rather about whether it was 'any other final action' within the meaning of § 307(b)(1), as amended in 1977.").

[10] *Id.* at 588–89 ("[W]e discern no uncertainty in the meaning of the phrase, 'any other final action.'  When Congress amended the provision in 1977, it expanded its ambit to include not simply 'other final action,' but rather 'any other final action.'  This expansive language offers no indication whatever that Congress intended the limiting construction of § 307(b)(1) that the respondents now urge. . . . [T]he phrase, 'any other final action,' in the absence of legislative history to the contrary, must be construed to mean exactly what it says, namely, *any other* final action.").

[11] *Cf. Tenn. Valley Auth. v. Whitman*, 336 F.3d 1236, 1247 n.23 (11th Cir. 2003) ("The [*PPG Industries*] Court had no occasion to address whether the EPA action at issue in that case was truly final agency action.  Both parties agreed that the agency decision was final.").

No. 12-60694
No. 13-60538

and does not mark the end of the EPA's decisionmaking process.

Fifth, if we were to accept Luminant's position, we would be the first circuit to treat such notices as final actions. The Third and Ninth Circuits expressly do not consider a notice of violation to be a "final action."[12] Several other courts of appeals have also recognized the advisory, preliminary, and non-binding nature of such notices.[13] Luminant has not offered any convincing reason for us to create a circuit split.

Finally, Luminant may challenge the adequacy of the notices before the district court as a defense to the enforcement action. Regulated entities have a full opportunity to challenge the adequacy or sufficiency of such notices once the EPA takes final action.[14] In fact, Luminant has already raised, in the district court, the same arguments it presses here.

The petitions are DISMISSED for want of subject-matter jurisdiction.

---

[12] *See Pacificorp v. Thomas*, 883 F.2d 661, 661 (9th Cir. 1988) ("Respondents' motion to dismiss is granted. An EPA notice of violation is not reviewable because it is not a final agency action."); *W. Penn Power Co. v. Train*, 522 F.2d 302, 310–11 (3d Cir. 1975) ("West Penn cites, and we have found, no statute which makes reviewable Train's issuance of a notice of violation. Under the statutory plan, the notice of violation is not 'final agency action' since it may be followed by either (1) an order which 'may' be issued 30 days after the notice, 42 U.S.C. § 1857c-8(a)(1) . . . or (2) a civil suit under 42 U.S.C. § 1857c-8(b), referred to above. The statutory scheme contemplates that the violation notice itself has neither an independent coercive effect nor 'the force of law.'").

[13] *See, e.g.*, *WildEarth Guardians v. EPA*, 728 F.3d 1075, 1082 (10th Cir. 2013); *Sierra Club*, 557 F.3d at 407; *Union Elec. Co. v. EPA*, 593 F.2d 299, 307 (8th Cir. 1979); *see also Royster-Clark Agribusiness, Inc. v. Johnson*, 391 F. Supp. 2d 21, 28 (D.D.C. 2005) ("Although the question of whether an NOV under the CAA is a final agency action is one of first impression in this circuit, all of the circuits that have addressed the issue have concluded that it is not.").

[14] *See, e.g.*, *United States v. Chevron U.S.A., Inc.*, 380 F. Supp. 2d 1104, 1108 (N.D. Cal. 2005) ("Amici argue that the issuance of a formal written Notice of Violation [ ] to the violator and the State is a jurisdictional prerequisite to the filing of an enforcement action"); *United States v. Pan Am. Grain Mfg. Co.*, 29 F. Supp. 2d 53, 56 (D.P.R. 1998) ("[The parties' disagreement hinges on an issue of law: whether the NOVs gave sufficient notice to Defendants as to the claims at issue pursuant to 42 U.S.C. § 7413(b).").