# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 30, 2014

Lyle W. Cayce
Clerk

No. 13-30262

———————

BELLE COMPANY, L.L.C.; KENT RECYCLING SERVICES, L.L.C.,

Plaintiffs-Appellants

v.

UNITED STATES ARMY CORPS OF ENGINEERS,

Defendant-Appellee

———————————————

Appeal from the United States District Court
for the Middle District of Louisiana

———————————————

Before REAVLEY, DAVIS, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Plaintiff-Appellant Belle Company, L.L.C. owns property in the Parish of Assumption. Plaintiff-Appellant Kent Recycling, L.L.C. has an option to purchase the property in the event that it can be used as a solid-waste landfill. In February 2012, Defendant-Appellee United States Army Corps of Engineers ("Corps") issued a jurisdictional determination ("JD") stating that the property contains wetlands that are subject to regulation under the Clean Water Act. Belle and Kent (collectively, "Belle") sued, alleging that the JD is unlawful and should be set aside. The district court dismissed the suit for lack of subject-matter jurisdiction, concluding that the JD is not "final agency action" and therefore is not reviewable under the Administrative Procedure Act. For the reasons that follow, we AFFIRM.

No. 13-30262

I.

The Clean Water Act ("CWA") prohibits, among other things, the "discharge of any pollutant" into "navigable waters" unless authorized by a permit. 33 U.S.C. §§ 1311(a), 1344. The CWA defines navigable waters as "the waters of the United States." 33 U.S.C. § 1362(7). Under Section 404 of the CWA, 33 U.S.C. § 1344, the Corps has authority to issue permits, termed 404 permits, for the discharge of dredged or fill materials into navigable waters. The regulations that govern the permitting process authorize the Corps to consult with potential permit applicants prior to receiving, processing, and issuing or denying individual permits. 33 C.F.R. § 325.1(b). The regulations also authorize the Corps "to issue formal determinations concerning the applicability of the Clean Water Act . . . to activities or tracts of land and the applicability of general permits or statutory exemptions to proposed activities." 33 C.F.R. §§ 320.1(a)(6); 325.9. The Corps has an administrative appeal process through which it reviews an initial JD. 33 C.F.R. § 331.

Belle's property has a long history. In 1991, the Corps informed Belle that the property correctly was designated as prior-converted cropland by the United States Department of Agriculture ("DOA") and thus did not constitute wetlands under the CWA. In 1993, the Corps and the United States Environmental Protection Agency ("EPA") promulgated a final rule that excluded property designated as prior-converted cropland from the definition of waters of the United States. 33 C.F.R. § 328.3(a)(8). In 1995, the DOA informed Belle that the property was prior-converted cropland and not a wetland under the 1990 Food and Security Act. In 2003, however, the Corps informed Belle that any prior correspondence as to the property's wetland status was not valid and that the property did constitute wetlands subject to Corps regulation. Subsequently, the Natural Resources Conservation Service

No. 13-30262

("NRCS") issued a technical determination, based on earlier findings, that the property was commenced-conversion cropland.

In 2005, NRCS and the Corps jointly promulgated guidance, which stated that a previous designation as prior-converted cropland would be valid if a property was devoted to agricultural use but not if it had changed to a nonagricultural use (the "change-in-use policy"). In 2009, the Corps released an Issue Paper and Memorandum (collectively, the "Stockton Rules") for JDs made in the Jacksonville District in Florida. These documents applied the 2005 Guidance to five properties in the Everglades and found that they were not prior-converted croplands because they had changed from an agricultural to a nonagricultural use.

In May 2009, Belle submitted to the Corps an application for a 404 permit to "conduct clearing and excavation activities to facilitate construction of a regional landfill" on the property. In June 2009, the Louisiana Department of Environmental Quality ("LDEQ") sent a letter to Belle, stating that the Corps had made a determination that a large portion of the proposed landfill site was considered wetlands. LDEQ further stated that Belle's Louisiana solid-waste permit would require a major modification that reflected the wetlands requirements in Louisiana regulations, LAC 33:VII.709.A.7-8, and that Belle should submit its major-modification application no later than 120 days after it received a decision on its 404 permit application. Belle subsequently abandoned its 404 permit application.

Almost two years later, in January 2011, on Belle's request and after a field inspection by a district engineer, the Corps issued an initial JD, which stated that part of the property was wetlands and subject to the CWA such that, as Belle apparently previously had sought, a 404 permit would be required prior to filling the site. Belle appealed the decision through the Corps's administrative appeal process. After an appeal meeting, site visit, and

3

review, the division engineer found that portions of Belle's administrative appeal had merit. On remand, after additional investigation and review, the Corps upheld the determination that part of the property is wetlands.

Belle sued in district court for declaratory and injunctive relief to set aside the JD as unlawful. The district court granted the Corps's motion to dismiss on the ground that it lacked subject-matter jurisdiction over Belle's claims because the JD is not final agency action reviewable in court under the Administrative Procedure Act ("APA"). Belle timely appealed. On appeal, Belle argues that the district court has subject-matter jurisdiction to review its three claims: (1) that the JD is arbitrary and capricious and should be invalidated; (2) that the administrative appeal process, as applied to Belle, unconstitutionally deprived Belle of liberty and property interests without due process of law; and (3) that the Corps promulgated the change-in-use policy without the proper APA rulemaking procedures, and in violation of an injunction, and improperly applied that policy in the JD.

## II.

We review *de novo* a district court's dismissal for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1). *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co.*, 704 F.3d 413, 421 (5th Cir. 2013). "The United States may not be sued except to the extent it has consented to such by statute." *Shanbaum v. United States*, 32 F.3d 180, 182 (5th Cir. 1994). The APA provides such a waiver for claims "seeking relief other than money damages." 5 U.S.C. § 702; *see King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410, 416 (5th Cir. 2013); *Armendariz–Mata v. U.S. Dep't of Justice, Drug Enforcement Admin.*, 82 F.3d 679, 682 (5th Cir. 1996). Where, as here, no relevant agency statute provides for judicial review, the APA authorizes judicial review only of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. If there is no final agency action, a court lacks subject-matter jurisdiction. *Am.*

No. 13-30262

*Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999); *see also Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) ("Absent a specific and final agency action, we lack jurisdiction to consider a challenge to agency conduct.").

"As a general matter, two conditions must be satisfied for agency action to be final: First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks and citations omitted). "In evaluating whether a challenged agency action meets these two conditions, this court is guided by the Supreme Court's interpretation of the APA's finality requirement as 'flexible' and 'pragmatic.'" *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149–50 (1967)). "The APA's judicial review provision also requires that the person seeking APA review of final agency action have 'no other adequate remedy in court.'" *Sackett v. EPA*, 132 S. Ct. 1367, 1372 (2012) (quoting 5 U.S.C. § 704).

In *Sackett*, 132 S. Ct. at 1371, the Supreme Court revisited the issue of final agency action under the CWA. The Sacketts filled a portion of their undeveloped property with dirt and rocks in preparation for building a house. *Id.* at 1370. The EPA then issued a compliance order that contained findings that the property contained wetlands under the CWA and that the Sacketts had discharged fill material into the wetlands. *Id.* at 1370–71. The order directed the Sacketts immediately to undertake restoration of the property per an EPA plan and to provide to the EPA access to the site and all documentation relating to the site. *Id.* at 1371. The Sacketts disagreed with the order, but the EPA denied their request for a hearing. *Id.* The Sacketts sued, and the Ninth Circuit affirmed the district court's dismissal for lack of subject-matter

jurisdiction, holding that the CWA precludes pre-enforcement review of compliance orders. *Id.*

The Supreme Court reversed, holding that the CWA does not preclude judicial review under the APA. *Id.* at 1374. The Court concluded that an EPA compliance order is a final agency action under the APA. *Id.* As to *Bennett* prong one, the order "marks the consummation of the agency's decisionmaking process" because "the Findings and Conclusions that the compliance order contained were not subject to further agency review." *Id.* at 1372. Furthermore, "[t]he mere possibility that an agency might reconsider in light of informal discussion and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal." *Id.* As to *Bennett* prong two, the order determines rights or obligations because "[b]y reason of the order, the Sacketts have the legal obligation to restore their property according to an agency-approved Restoration Work Plan, and must give the EPA access to their property and to records and documentation related to the conditions at the Site." *Id.* at 1371 (internal quotation marks and citation omitted). Further, legal consequences flow from issuance of the order because "the order exposes the Sacketts to double penalties in a future enforcement proceeding. It also severely limits the Sacketts' ability to obtain a permit for their fill from the Army Corps of Engineers. The Corps' regulations provide that, once the EPA has issued a compliance order with respect to certain property, the Corps will not process a permit application for that property unless doing so is clearly appropriate." *Id.* at 1371–72. Finally, the Sacketts had no other adequate remedy in court because "[i]n Clean Water Act enforcement cases, judicial review ordinarily comes by way of a civil action brought by the EPA under 33 U.S.C. § 1319. But the Sacketts cannot initiate that process, and each day they wait for the agency to drop the hammer, they accrue, by the Government's telling, an additional $75,000 in potential liability." *Id.* at 1372. The Court

emphasized: "The other possible route to judicial review—applying to the Corps of Engineers for a permit and then filing suit under the APA if a permit is denied—will not serve either. The remedy for denial of action that might be sought from one agency does not ordinarily provide an adequate remedy for action already taken by another agency." *Id.* at 1372.

Belle argues that the Court's decision in *Sackett* compels the conclusion that the JD is reviewable final agency action.

A.

First, to be final the JD "must mark the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 177–78. Where an agency has "asserted its final position on the factual circumstances underpinning" its action, that is an indication that it marks the consummation of the decisionmaking process. *See Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 483 (2004). Where an action has proceeded through an administrative appeal process and is not subject to further agency review, that too is an indication that the action marks the consummation of the decisionmaking process. *See Peoples Nat'l Bank v. Office of Comptroller of Currency of U.S.*, 362 F.3d 333, 337 (5th Cir. 2004) (concluding that agency notification was not consummation of decisionmaking process where regulated party had not yet utilized administrative appeal process); *Exxon Chem. Am. v. Chao*, 298 F.3d 464, 467 (5th Cir. 2002) (concluding that agency remand order was not consummation of decisionmaking process because there remained a possibility that regulated party might prevail in its administrative action).

Prior to *Sackett*, in *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008), the Ninth Circuit concluded that a JD marks the consummation of the Corps's decisionmaking process because the Corps "has asserted its ultimate administrative position regarding the presence of wetlands on Fairbanks' property on the factual circumstances upon

which the determination is predicated." The JD marks the consummation of a formal procedure for parties to solicit the Corps's "official position" about the scope of CWA jurisdiction. *Id.* at 592. The district court below also concluded that the JD is the consummation of the Corps's decisionmaking process because there will be no further agency decisionmaking on the issue.

The Court's reasoning in *Sackett* as to *Bennett* prong one reinforces the conclusion that the JD is the consummation of the Corps's decisionmaking process. A JD is "a written Corps determination that a wetland and/or waterbody is subject to regulatory jurisdiction under" the CWA. 33 C.F.R. § 331.2. Once a JD has proceeded through the administrative appeal process, the final JD is not subject to further formal review by the agency. *See* 33 C.F.R. § 331.9. Corps regulations further state that "the public can rely on that determination as a Corps final agency action." 51 F.R. 41,206-01 (Nov. 1986) (citing 33 C.F.R. § 320.1(a)(6)). The Corps's consummation argument—that the JD is one step at the beginning of the administrative process, that it entails the possibility of further proceedings on a permit application, and that it could change over time—rests on too broad a level of generality. The Court in *Sackett* rejected that argument, reasoning that the findings and conclusions in the EPA compliance order, which included a finding that the property was subject to CWA jurisdiction, "were not subject to further agency review." *Sackett,* 132 S. Ct. at 1372. Furthermore, "[t]he mere possibility that an agency might reconsider in light of informal discussion and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal." *Id.*

Through the JD, the Corps has asserted its final position on the facts underlying jurisdiction—that is, the presence or absence on Belle's property of waters of the United States as defined in the CWA. *See Alaska Dep't of Envtl. Conservation,* 540 U.S. at 483; *Fairbanks,* 543 F.3d at 593 (finding that a JD "announces the Corps' considered, definite and firm position about the

presence of jurisdictional wetlands on [the] property at the time it is rendered"). This is evidenced by the fact that the JD was subject to, and proceeded through, an extensive administrative appeal process within the Corps and hence is termed a "final" JD. *See* 33 C.F.R. § 331.9; *Peoples Nat'l Bank*, 362 F.3d at 337; *Exxon Chem.*, 298 F.3d at 467.

We conclude that the JD marks the consummation of the Corps's decisionmaking process as to the question of jurisdiction.

### B.

Second, to be final the JD must be an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks and citation omitted). Where "the action sought to be reviewed may have the effect of forbidding or compelling conduct on the part of the person seeking to review it, but only if some further action is taken by the [agency]," that action is nonfinal and nonreviewable because it "does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 129–30 (1939);[1] *see also FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 240–41 (1980) (concluding that agency's issuance of complaint, which stated it had "reason to believe" regulated party was violating statute, was not final agency action but merely "a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings"); *Luminant Generation Co., L.L.C. v. EPA*, ___ F.3d ___, Nos. 12–60694, 13–60538, 2014 WL 3037692, at \*3 (5th Cir. 2014) (concluding that EPA's issuance of notice of violation of Clean Air Act

---

[1] In *Rochester*, 307 U.S. at 30, the Court listed as examples of such nonfinal action: "[O]rders of the Interstate Commerce Commission setting a case for hearing despite a challenge to its jurisdiction, or rendering a tentative or final valuation under the Valuation Act, although claimed to be inaccurate, or holding that a carrier is within the Railway Labor Act and therefore amenable to the National Mediation Board." (internal citations omitted).

was not final agency action because, *inter alia*, "adverse legal consequences will flow only if the district court determines that Luminant violated the Act or the SIP" and "if the EPA issued notice and then took no further action, Luminant would have no new legal obligation imposed on it and would have lost no right it otherwise employed"); *AT & T Co. v. EEOC*, 270 F.3d 973, 975 (D.C. Cir. 2001) ("[The agency's action] must have inflicted an actual, concrete injury upon the party seeking judicial review. Such an injury typically is not caused when an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party." (internal quotation marks and citation omitted)).

Prior to *Sackett*, all of the courts, including ours, that had considered the question held that a JD does not determine rights or obligations or have legal consequences and thus is not final agency action. *See Fairbanks*, 543 F.3d at 597; *Greater Gulfport Properties, LLC v. U.S. Army Corps of Eng'rs*, 194 F. App'x 250, 250 (5th Cir. 2006) (per curiam) (unpublished); *Comm'rs of Pub. Works of City of Charleston v. United States*, No. 93-2061, 30 F.3d 129, at *2 (4th Cir. 1990) (per curiam) (unpublished); *Coxco Realty, LLC v. U.S. Army Corps of Eng'rs*, Civil Action No. 3:06-CV-416-S, 2008 WL 640946, at *4–5 (W.D. Ky. Mar. 4, 2008); *St. Andrews Park, Inc. v. U.S. Dep't of Army Corps of Eng'rs*, 314 F. Supp. 2d 1238, 1244–45 (S.D. Fla. 2004); *Child v. United States*, 851 F. Supp. 1527, 1534–35 (D. Utah 1994); *Hampton Venture No. One v. United States*, 768 F. Supp. 174, 175–76 (E.D. Va. 1991); *Route 26 Land Dev. Co. v. U.S. Gov't*, 753 F. Supp. 532, 539–40 (D. Del. 1990); *Lotz Realty Co. v. United States*, 757 F. Supp. 692, 695–97 (E.D. Va. 1990).

Since *Sackett*, the few courts, including the district court below, that have considered the question have reasoned to the same conclusion. *See Hawkes Co., Inc. v. U.S. Army Corps of Eng'rs*, 963 F. Supp. 2d 868, 873–78 (D. Minn. 2013) (holding that a Corps JD is not final agency action); *Nat'l Ass'n of*

*Homebuilders v. EPA*, 956 F. Supp. 2d 198, 209–212 (D.D.C. 2013) (explaining that a Corps determination that a property contains traditional navigable waters is practically indistinguishable from a JD and thus is not final agency action).

Indeed, the Court's reasoning in *Sackett* as to *Bennett* prong two highlights the determinative distinctions between a JD and an EPA compliance order. First, and foremost, the compliance order independently imposed legal obligations because it ordered the Sacketts promptly to restore their property according to an EPA-approved plan and give the EPA access to site records and documentation. *Sackett*, 132 S. Ct. at 1371–72. By contrast, the JD is a notification of the property's classification as wetlands but does not oblige Belle to do or refrain from doing anything to its property. It notifies Belle that a 404 permit will be required prior to filling, and we are cognizant that the Corps's permitting process can be costly for regulated parties. *See Rapanos v. United States*, 547 U.S. 715, 721 (2006). But even if Belle had never requested the JD and instead had begun to fill, it would not have been immune to enforcement action by the Corps or EPA. *See Luminant*, 2014 WL 3037692, at *3 ("The Clean Air Act and the Texas SIP, not the notices, set forth Luminant's rights and obligations."). Indeed, prior to Belle's request for a JD, the Corps informed Belle that even if no JD issued, that "does not alleviate your responsibility to obtain the proper DA permits prior to working in wetlands that may occur on this property."[2]

Belle argues that the JD has consequences under Louisiana law—namely, that LDEQ will require Belle to modify the state permit it previously acquired for its property. Putting aside that the LDEQ letter Belle cites is

---

[2] As noted previously, Belle did commence the permit process but subsequently abandoned it for reasons not apparent in the existing record.

dated 2009, years prior to the 2012 JD that Belle challenges, state-agency action does not transform nonfinal federal-agency action into final action for APA purposes. *See Ocean Cnty. Landfill Corp. v. EPA*, 631 F.3d 652, 656 (3d Cir. 2011) ("W]here a state actor relies upon a federal agency's notice, the state action does not convert the notice into a final agency act under the APA.") (citing *Hindes v. FDIC*, 137 F.3d 148, 163 (3d. Cir. 1988) (citing *Air California v. U.S. Dep't of Transp.*, 654 F.2d 616, 621 (9th Cir.1981))); *Resident Council of Allen Parkway Village v. U.S. Dep't of Housing & Urban Dev.*, 980 F.2d 1043, 1055–56 (5th Cir. 1993) (concluding that HUD interpretation was not final agency action despite the fact that it resulted in actions by state housing authority). *Cf. Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 875 F.2d 453, 456 (5th Cir. 1989) (explaining that APA is "a route through which private plaintiffs can obtain federal court review of the decisions of federal agencies" and concluding that plaintiffs could not challenge state-agency action even if based on challenged Corps decisions that allegedly violated a statute). Even assuming that LDEQ's letter could make federal action final, the letter requests that Belle submit a permit-modification request only "after the 404 permit decision" from the Corps because the state requirements "may be impacted by requirements of a 404 permit." Thus, this alleged consequence depends on, and does not inure until, the Corps's decision on a future permit application. *See Rochester Tel.*, 307 U.S. at 130; *Exxon Chem.*, 298 F.3d at 467.

Second, the compliance order in *Sackett* itself imposed, independently, coercive consequences for its violation because it "expose[d] the Sacketts to double penalties in a future enforcement proceeding," *Sackett*, 132 S. Ct. at 1372. By contrast, the JD erects no penalty scheme. It imposes no penalties on Belle. And neither the JD nor Corps regulations nor the CWA require Belle to comply with the JD. *See Luminant*, 2014 WL 3037692, at *3 ("[N]othing in the

Clear Air Act requires a regulated entity to 'comply' with a notice."). Belle argues that one factor in calculating civil and criminal penalties in a future enforcement action is Belle's "good faith efforts to comply" with the CWA, which could be undermined because the JD alerts Belle to the presence of wetlands on its property. *See* 33 U.S.C. §1319. However, the use of the JD in assessing future penalties is speculative, whereas in *Sackett* the order caused penalties to accrue pending restoration of the property. *See Sackett*, 132 S. Ct. at 1372; *Fairbanks*, 543 F.3d at 595 (noting that § 1319(d) does not mention JDs or assign them specific evidentiary weight, so the speculative penalties could be a practical effect but not a legal consequence) (citing *Ctr. for Auto Safety v. NHTSA*, 452 F.3d 798, 811 (D.C. Cir. 2006)); *see also Energy Transfer Partners v. F.E.R.C.*, 567 F.3d 134, 141–42 (5th Cir. 2009) (explaining that the "expense and annoyance of litigation," although a substantial burden, "is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action") (quoting *Standard Oil*, 449 U.S. at 242, 244).

Third, whereas the compliance order in *Sackett* severely limited the Sacketts' ability to obtain a 404 permit from the Corps, *see Sackett*, 132 S. Ct. at 1372, the JD operates oppositely, informing Belle of the necessity of a 404 permit to avoid enforcement action. Significantly for the Court in *Sackett*, Corps regulations state: "No permit application will be accepted nor will the processing of an application be continued when the district engineer is aware of enforcement litigation that has been initiated by other Federal, state, or local regulatory agencies, unless he determines that concurrent processing of an after-the-fact permit application is clearly appropriate." 33 C.F.R. § 326.3(e)(1)(iv). By contrast, Corps regulations do not impose any such

restriction with regard to the JD; pertinent here, the JD itself does not state that it will limit a party's ability to obtain a permit.[3]

Fourth and finally, the compliance order in *Sackett* determined that the Sacketts' property contained wetlands *and* that they had discharged material into those wetlands in violation of the CWA. *See Sackett*, 132 S. Ct. at 1369–70. In other words, the order resolved that the Sacketts had violated the CWA and hence were subject to penalties and had to restore their property. *See Sackett*, 132 S. Ct. at 1373 ("As the text (and indeed the very name) of the compliance order makes clear, the EPA's deliberation over whether the Sacketts are in violation of the Act is at an end."). Indeed, the EPA compliance order was based, in part, on a finding that the Sacketts' property contained wetlands subject to CWA jurisdiction, *see id.* at 1370; yet the Court did not rely on that jurisdictional finding as the basis for its decision but relied instead on the consequences that flowed from the compliance order. *See id.* at 1371–72.

---

[3] Belle points to Corps regulations that state: "A determination pursuant to this authorization shall constitute a Corps final agency action." § 320.1(a)(6). However, Corps regulations clarify:

> [E]ven final agency actions must be "ripe" before a court can review them. In the past, a number of courts have held that jurisdictional determinations are not ripe for review until a landowner who disagrees with a JD has gone through the permitting process. The Federal Government believes this is the correct result, and nothing in today's rule is intended to alter this position. . . . JDs are not necessarily "final" even as an administrative matter. . . . Accordingly, we have decided not to address in this rulemaking when a JD should be considered a final agency action.

65 F.R. 16,486-01 (Mar. 28, 2000). Thus, the Corps does not interpret the above language to mean final agency action *for APA purposes*. Under *Auer v. Robbins*, 519 U.S. 452, 461 (1997), an agency's interpretation of its own regulation receives deference unless it is plainly erroneous or inconsistent with the regulation. *See also Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013); *Elgin Nursing and Rehabilitation Ctr. v. U.S. Dept. Of Health and Human Servs.*, 718 F.3d 488, 492–93 (5th Cir. 2013). Regardless, the regulations' language is not dispositive. *See Exxon Chem.*, 298 F.3d at 467 n.2; *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225–26 (5th Cir. 1994); *Hampton Venture,* 768 F. Supp. at 175; *Lotz Realty*, 757 F. Supp. at 697.

No. 13-30262

By contrast, the JD does not state that Belle is in violation of the CWA, much less issue an order to Belle to comply with any terms in the JD or take any steps to alter its property. *See Luminant*, 2014 WL 3037692, at \*3 (distinguishing between an EPA notice of violation of the Clean Air Act and the compliance order in *Sackett* and concluding that the former was not final agency action). Moreover, while the Corps, responsive to Belle's own inquiry, has made a determination as to the presence of wetlands on Belle's property, it renders no regulatory opinion as to Belle's ultimate goal to build a landfill. Belle could still obtain a Corps permit to fill, without the presumption (attached to an EPA compliance order) against issuing a permit. *See* 33 C.F.R. § 326.3(e)(1)(iv). If Belle does not obtain a permit, Corps regulations allow Belle to initiate suit in court, where Belle may challenge the permit decision as well as the underlying jurisdiction. *See* 33 C.F.R. § 331.12. Belle's proposed framework, where it could first request a wetlands determination and then seek judicial reassessment of that regulatory determination but also later seek separate review of any permit decision based on that jurisdiction, would disrupt the regulatory review system already in place. *See Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 708 (5th Cir. 2010) ("To determine whether the APA's default rule of review is applicable, we look to the agency-specific statutes and rules."); *Beall v. United States*, 336 F.3d 419, 427 n.9 (5th Cir. 2003), *abrogated on other grounds*, *Hincks v. United States*, 550 U.S. 501 (2007) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.") (citing *Bowen v. Massachusetts*, 487 U.S. 879 (1988)). Furthermore, authorizing judicial review of JDs, to the extent that it would disincentivize the Corps from providing them, would undermine the system through which property owners can ascertain their rights and evaluate their options with regard to their properties *before* they are subject to compliance orders and enforcement actions for

15

violations of the CWA. The above distinctions between the compliance order and the JD effectuate both prongs of the *Bennett* test: the action cannot be only a final decision, it must be also a final decision that "alter[s] the legal regime" to which the regulated party is subject. *See Bennett*, 520 U.S. at 178. We conclude that, under that standard and under current doctrine, especially *Sackett*, the JD is not an action by which rights or obligations have been determined, or from which legal consequences will flow.[4]

We hold that the JD is not reviewable final agency action under the APA and affirm the district court's dismissal of this claim for lack of subject-matter jurisdiction.

III.

Belle argues second that the Corps's administrative appeal process deprived Belle of its liberty and property interests without due process of law. The district court did not reach this claim, explaining: "Because the Court finds that it lacks subject matter jurisdiction, it is not necessary to address Plaintiffs' remaining claims." However, the district court dismissed all of the claims

---

[4] To be final, an agency action also must be one for which there is "no other adequate remedy in a court." 5 U.S.C. § 704; *see Sackett*, 132 S. Ct. at 1372. Even assuming that the JD met *Bennett* prong two, Belle may have an adequate judicial remedy because it could apply for a Corps permit and, if the Corps denies the permit, challenge the denial and the underlying jurisdiction in court. *See* 33 C.F.R. § 331.12. In *Sackett*, the Court found that there was no adequate alternative to challenge the EPA compliance order for two reasons. First, the Sacketts could not initiate a challenge to the compliance order because in CWA enforcement cases the EPA initiates the civil action, and in the meantime the Sacketts had to wait and accrue potential liability. *Id.* Second, the process of applying for a Corps permit and then filing suit if the Corps denied the permit was not adequate because "[t]he remedy for denial of action that might be sought from one agency does not ordinarily provide an adequate remedy for action already taken by another agency." *Id.* Here, the Corps issued the JD, so it is not the case that the only alternative remedy is one provided by a different agency. *See* C.F.R. §§ 331.10, 331.12. Furthermore, as noted above, Belle is not incurring any liability and Belle can bring a challenge in court if the Corps denies a future permit application. *See* 33 C.F.R. § 331.12. Thus, the Corps JD is distinguishable from the EPA compliance order on this ground as well. *See Sackett*, 132 S. Ct. at 1372; *Dresser*, 628 F.3d at 708; *Beall*, 336 F.3d at 427 n.9.

without prejudice, thus impliedly dismissing this claim for lack of subject-matter jurisdiction under 12(b)(1) and not on the merits under 12(b)(6). *Brooks v. Raymond Dugat Co. L C*, 336 F.3d 360, 362 (5th Cir. 2003). We review the decision to dismiss for lack of subject-matter jurisdiction *de novo*. *Ctr. for Biological Diversity*, 704 F.3d at 421. We may affirm on any ground supported by the record. *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014). Furthermore, "the issue of subject matter jurisdiction is subject to plenary review by this court." *Taylor-Callahan-Coleman Counties Dist. Adult Probation Dep't v. Dole*, 948 F.2d 953, 956 (5th Cir. 1991).

Belle raised a facial challenge to the Corps's administrative appeal process below, but on appeal raises only an as-applied challenge to the Corps's conduct in Belle's administrative appeal process. Belle argues that this due-process claim provides an independent basis for jurisdiction under 28 U.S.C. § 1331. Section 1331 provides federal-question jurisdiction for the due-process claim. *See Stockman v. FEC*, 138 F.3d 144, 151 n.13 (5th Cir. 1998) (noting that APA does not create an independent grant of jurisdiction but that jurisdiction exists under § 1331 and that APA then serves as waiver of sovereign immunity). However, "28 U.S.C. §1331 is a general jurisdiction statute and does not provide a general waiver of sovereign immunity." *Shanbaum*, 32 F.3d at 182 (citing *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1385 (5th Cir. 1989)). Thus, Belle must prove that the government waived its immunity. *See Taylor-Callahan-Coleman*, 948 F.2d at 956 (explaining that § 1331 afforded jurisdiction over plaintiff's due process and APA claims against Department of Labor but that plaintiff still had to establish a waiver of sovereign immunity under APA's final-agency-action requirement); *see also Smart v. Holder*, 368 F. App'x 591, 593 (5th Cir. 2010) (unpublished) (affirming dismissal of due-process claim against DOJ where none of the statutes plaintiff cited provided waiver of immunity) (citing *Boehms*

No. 13-30262

*v. Crowell*, 139 F.3d 452, 462–63 (5th Cir. 1998); *S. Sog, Inc. v. Roland*, 644 F.2d 376, 380 (5th Cir. Unit A May 1981)).[5]

In neither its complaint nor its briefs on appeal does Belle cite a statutory waiver of sovereign immunity for its due-process claim or argue that it is a claim under the APA. The only waiver of sovereign immunity that Belle cites is the APA. *Cf. Doss v. S. Cent. Bell Tel. Co.*, 834 F.2d 421, 424 (5th Cir. 1987) ("[W]here a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute.") (quoting *Hildebrand v.*

---

[5] In a Rule 28(j) letter, Belle cites *Alabama-Coushatta Tribe of Tex. v. United States*, No. 13-40644, 2014 WL 3360472, at *3–4 (5th Cir. 2014), where this court held that the APA, 5 U.S.C. § 702, provides a waiver of sovereign immunity for two distinct types of claims: (1) claims where judicial review is sought only pursuant to the general provisions of the APA; and (2) claims where judicial review is sought pursuant to a separate statutory or nonstatutory cause of action. As to the latter type of waiver, this court held, "there only needs to be 'agency action' as set forth by 5 U.S.C. § 551(13)." *Id.* at *4. Belle does not articulate the effect of this case on its due-process claim, and, in any event, it does not affect the outcome here. This court in *Alabama-Coushatta* relied on *Sheehan v. Army & Air Force Exch. Serv.*, 619 F.2d 1132, 1139 (5th Cir. 1980), *rev'd on other grounds*, 456 U.S. 728 (1982), and *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 186–89 (D.C. Cir. 2006). In *Sheehan*, 619 F.2d at 1139, this court held that § 702 waives sovereign immunity for statutory and nonstatutory causes of action, without discussing whether the final-agency-action requirement of § 704 applies to those claims. In *Trudeau*, 456 F.3d at 345–46, the D.C. Circuit held that the final-agency-action requirement does not restrict § 702's waiver of sovereign immunity at all; instead, it operates as a (12)(b)(6) merits restriction rather than as a 12(b)(1) jurisdiction restriction. *Alabama-Coushatta*, *see* 2014 WL 3360472, at *4, bifurcates the 12(b)(1) analysis and holds that for the APA to waive sovereign immunity for a claim under the general provisions of the APA, the claim must challenge a "final agency action" under § 704, whereas for the APA to waive sovereign immunity for a claim under other statutory or nonstatutory provisions, the claim must challenge only "agency action" as defined in § 551(13). Even following *Alabama-Coushatta* on its own terms, therefore, Belle still would have to show that the JD is final agency action to survive a 12(b)(6) dismissal of its due-process claim, which, for the reasons explained above, it has not done. Furthermore, to the extent that is the approach required by *Alabama-Coushatta*, it is in tension with the Fifth Circuit cases cited above, which establish that a lack of "final agency action" is a 12(b)(1) deficiency. Finally, in both *Sackett*, 132 S. Ct. at 1371, and *Taylor-Callahan-Coleman*, 948 F.2d at 956, the plaintiffs challenged the agency actions on both APA and due-process grounds, and the Supreme Court and an earlier panel of this court conducted the final-agency-action analysis without bifurcating the two claims or proceeding to the merits of either.

18

No. 13-30262

*Honeywell*, 622 F.2d 179, 181 (5th Cir. 1980)). Belle does not argue or establish that the administrative appeal process that culminated in the JD, as applied to Belle, is final agency action. *See Taylor-Callahan-Coleman*, 948 F.2d at 956; *Stockman*, 138 F.3d at n.13. Accordingly, we affirm the district court's dismissal of this claim for lack of subject-matter jurisdiction.

IV.

Belle argues third that the Corps promulgated the change-in-use policy in the Stockton Rules, in violation of APA rulemaking requirements, and that the Corps violated a nationwide injunction when it applied the Rules in the JD for Belle's property. The district court similarly did not reach this claim. Again, we may affirm on any ground in the record. *Gilbert*, 751 F.3d at 311.

On their face the Stockton Rules apply only to the Corps's Jacksonville District, and even then only to five applications for approved JDs that were pending at the time. Nothing in the Stockton Rules purports to apply to Belle's property or even to the New Orleans District. Further, nothing in the JD purports to apply the Stockton Rules to Belle's property. Indeed, although the Corps division engineer in Belle's administrative appeal found no evidence that the district engineer had used the Stockton Rules, in an abundance of caution he prohibited the district engineer from using them on remand.

Additionally, the Stockton Rules govern properties classified as prior-converted cropland, and Belle's property was classified as commenced-conversion cropland at least as early as 2003. Belle cites *New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 746 F. Supp. 2d 1272 (S.D. Fl. 2010), which held that the Stockton Rules were final agency action that violated the APA's rulemaking requirements and enjoined the Corps from using them. But the *New Hope Power* court characterized the Stockton Rules as governing prior-converted cropland. *Id.* at 1274. Moreover, Belle was not a party to that case. Thus, it is not clear how any action with regard to the Stockton Rules would

redress Belle's alleged injury. *See Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012) ("This Court has long held that a person suing under the APA must satisfy . . . Article III's standing requirements."); *United States v. Holy Land Foundation for Relief and Dev.*, 445 F.3d 771, 780 (5th Cir. 2006) (explaining that to establish redressability, a plaintiff must show that there is a substantial likelihood that the requested relief will remedy the alleged injury-in-fact); *see also League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011) (citing *Bennett*, 520 U.S. at 167) (explaining that it must be likely, as opposed to merely speculative, that a favorable decision would redress the injury); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105–06 (1998) (finding failure of redressability requirement where none of the specific items of relief sought and none the Court could envision under general request would redress plaintiff's losses). To the extent that what Belle in fact challenges is the Corps's change-in-use policy, the Corps promulgated that policy not in the Stockton Rules but in its 2005 Guidance. Belle does not challenge that Guidance on appeal, and in any event such a challenge is barred by the statute of limitations. 28 U.S.C. § 2401(a).

If the Stockton Rules are relevant to the determination of this case, it is only insofar as Belle challenges their alleged presence in the JD. As identified to us, the record does not bear out that proposition; moreover, the JD is not reviewable final agency action for the reasons discussed above. Accordingly, we affirm the district court's dismissal of this claim for lack of subject-matter jurisdiction.

V.

We AFFIRM the district court's judgment.