# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2014

Lyle W. Cayce
Clerk

No. 13-40644

THE ALABAMA-COUSHATTA TRIBE OF TEXAS,

Plaintiff-Appellant,

v.

UNITED STATES OF AMERICA; THOMAS JAMES VILSACK, in his capacity as Secretary of the United States Department of Agriculture; SALLY JEWELL, in her capacity as Secretary of the United States Department of the Interior,

Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Texas

Before STEWART, Chief Judge, DENNIS and ELROD, Circuit Judges.

CARL E. STEWART, Chief Judge:

The Alabama-Coushatta Tribe of Texas brought suit against the United States and various federal agencies alleging *inter alia* violations of the Administrative Procedures Act and federal common law. The district court granted the Government's motion to dismiss for lack of subject matter jurisdiction. Because we hold that the Tribe has failed to allege "agency action" sufficient to meet the standards required for waiver of the Government's sovereign immunity, we AFFIRM.

No. 13-40644

## FACTS AND PROCEEDINGS

The Alabama-Coushatta Tribe of Texas ("Tribe") is a federally-recognized Indian tribe. The Tribe asserts that it holds unextinguished aboriginal title[1] to approximately 400,000 acres of land in the Big Thicket region of East Texas covering the Davy Crockett and Sam Houston National Forests and the Big Thicket National Preserve. For centuries, the Tribe has called this region home. In 2000, the Court of Federal Claims agreed with the Tribe that it holds aboriginal title to these lands.[2] *See Alabama-Coushatta Tribe of Tex. v. United States*, No. 3–83, 2000 WL 1013532 (Fed. Cl. June 19, 2000). The Court of Federal Claims issued a nonbinding recommendation to Congress that the federal government "violated its fiduciary obligations by knowingly failing to protect 2,850,028 acres of the Tribe's aboriginal lands" and that it should pay damages accordingly. *See id.* at *61–62. However, Congress has never acted on the Court of Federal Claims' recommendation. Meanwhile, the Tribe alleged, the United States, acting through various federal agencies, has continued to approve drilling leases and permits to third parties. This has allowed the exploitation of the natural resources on the land in derogation of the Tribe's aboriginal title.

The Tribe filed this action against the United States and various agencies (collectively "the Government") claiming that the Government breached its fiduciary duty under federal law to protect the land and natural

---

[1] Aboriginal title is a unique form of title to real property, loosely analogized to a "perpetual right of occupancy" with an "ultimate reversion in fee" to the sovereign. *Mitchel v. United States*, 34 U.S. (9 Pet.) 711, 746, 756 (1835); *see generally* Robert Coulter, Native Land Law § 3:2 (2013). Aboriginal title is an equitable possessory interest, which is not superior to that possessed by the United States, the actual title holder. *Johnson v. M'Intosh*, 21 U.S. (8 Wheat.) 543, 592 (1823); *see also Oneida Indian Nation of N.Y. State v. Cnty. of Oneida*, 414 U.S. 661, 667 (1974) ("*Oneida I*"). These interests include a right of occupancy, use, and enjoyment, which can only be extinguished by an express act of Congress. *See Oneida I*, 414 U.S. at 667–69.

[2] As both parties recognized, this decision is not binding on our Court.

2

No. 13-40644

resources subject to the aboriginal title of the Tribe. The Tribe asserted that there was jurisdiction for the suit based on 28 U.S.C. §§ 1331 (federal question), 1362 (action by Indian tribe)[3] and brought causes of action pursuant to the Administrative Procedures Act ("APA"), the Nonintercourse Act, the Declaratory Judgment Act, and federal common law. The Tribe sought to stop the Government from taking actions that facilitate the wrongful trespass on the Tribe's lands and to force the Government to take the appropriate action to protect the Tribe's lands when the Government makes discretionary decisions impacting the land. Specifically, the Tribe challenged: (1) the National Park Service's issuance of permits to drill for oil or gas in the Big Thicket National Preserve; (2) the Forest Service's issuance of drilling permits for privately owned mineral estates located under the Sam Houston and Davy Crockett National Forests; (3) the Bureau of Land Management's issuance of oil and gas leases for land in the Sam Houston and Davy Crockett National Forests, and the collection of royalties and rent payments from these leases; and (4) the National Forest Service's exploitation and sale of timber resources from the Davy Crockett and Sam Houston National Forests.[4] The Tribe made no other challenges to actions taken by the United States and its agencies.

The Tribe sought equitable relief, including declarations that the Government's actions in the past violated federal common law and the Nonintercourse Act and that in the future the Government must consider and accommodate the Tribe's aboriginal title; a permanent injunction; accounting

---

[3] The Tribe also asserted jurisdiction for its mandamus claim under 28 U.S.C. § 1361; however, the Tribe does not pursue this claim on appeal. Additionally, the Tribe asserted jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346, and the Tucker Act, 28 U.S.C. § 1491. The Tribe fails to make any argument for jurisdiction based on these statutes, and therefore, has waived any argument it may have had with respect to these statutes. *See Sama v. Hannigan*, 669 F.3d 585, 589 (5th Cir. 2012).

[4] Notably, the Tribe did not point to any identifying factors except for the alleged total number granted for a single lease, permit, or sale of these resources.

of the revenues collected as a result of the Government's actions; and, if necessary, the appointment of a special master to make decisions regarding mineral rights on these lands. The Tribe did not seek monetary relief or the conveyance of the land at issue. Rather, the Tribe sought only to prevent the Government from continuing to breach its fiduciary duties in recent and pending discretionary administrative decisions with respect to federal land in the Tribe's territory. The Government filed a motion to dismiss the Tribe's lawsuit for lack of subject-matter jurisdiction, or in the alternative, for failure to state a claim upon which relief can be granted.

The district court referred the matter to the magistrate judge ("MJ"). The MJ issued a report and recommendation stating that the district court should grant the Government's motion to dismiss for lack of subject-matter jurisdiction because the Tribe made a programmatic challenge to the federal agencies' actions, and therefore, the actions were not reviewable under § 702. The MJ also recommended that the Tribe could not establish a breach of fiduciary duty based on the Nonintercourse Act, and that only the Government's wrongful, total extinguishment of aboriginal title, is actionable. The district court adopted the MJ's report and recommendation over the Tribe's objections.

## DISCUSSION

We review a district court's grant of a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) de novo. *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1307 (2014). The Tribe, as the party asserting federal subject-matter jurisdiction, has the burden of proving that this requirement has been met. *Id.* When facing a challenge to subject-matter jurisdiction and other challenges on the merits, we must consider first the Rule 12(b)(1) jurisdictional challenge prior to addressing the merits of the claim. *See id.*

No. 13-40644

"Whether the United States is entitled to sovereign immunity is a question of law which this court reviews de novo." *Koehler v. United States*, 153 F.3d 266, 265 (5th Cir. 1998) (citation omitted). "It is well settled that the United States may not be sued except to the extent that it has consented to suit by statute." *Id.* (citation omitted). Further, "[w]here the United States has not consented to suit or the plaintiff has not met the terms of the statute the court lacks jurisdiction and the action must be dismissed." *Id.* at 266 (citation omitted). "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

The Tribe seeks judicial review of the actions of various federal agencies pursuant to 28 U.S.C. § 1331 and § 1346. In order to maintain this action, there must be a waiver of sovereign immunity. *See Koehler*, 153 F.3d at 265. The only applicable waiver is from the APA, 5 U.S.C. § 702; therefore, the Tribe must prove that the requirements of § 702 have been met. *See Willoughby*, 730 F.3d at 479. Section 702 of the APA "waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review." *Sheehan v. Army & Air Force Exch. Serv.*, 619 F.2d 1132, 1139 (5th Cir. 1980), *rev'd on other grounds*, 456 U.S. 728 (1982); *see also Armendariz-Mata v. U.S. Dep't of Justice*, 82 F.3d 679, 682 (5th Cir. 1996) ("Congress intended to broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by § 702 . . . ."(citation omitted)).[5]

---

[5] Section 702 of the APA provides in full:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or

No. 13-40644

In *Sheehan*, we agreed with the Third Circuit that Congress intended to waive immunity for non-statutory causes of action against federal agencies arising under 28 U.S.C. § 1331.  *Sheehan*, 619 F.2d at 1139 ("We too . . . hold that Congress did intend to waive the defense of sovereign immunity for nonstatutory review under section 1331").  Although *Sheehan* was ultimately reversed by the Supreme Court on other grounds, we continue to agree with this specific holding.  *See Rothe Dev. Corp. v. U.S. Dep't of Defense*, 194 F.3d 622, 624 n.2 (5th Cir. 1999) (citing *Sheehan* as support for the fact that § 702 is a waiver of sovereign immunity for actions against federal government agencies, if the agency is otherwise subject to judicial review).  Section 702's legislative history as illuminated by the Third Circuit in *Jaffee v. United States*, 592 F.2d 712, 718–19 (3d Cir.), *cert. denied*, 441 U.S. 961 (1979) is particularly instructive on this point.  Additionally, this holding is supported by a number of decisions in our sister circuits.  *See, e.g.*, *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 775 (7th Cir. 2011); *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 186–87 (D.C. Cir. 2006); *United States v. City of Detroit*, 329 F.3d 515, 520–21 (6th Cir. 2003) (en banc).

Section 702 contains two separate requirements for establishing a waiver of sovereign immunity.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).  First, the plaintiff must identify some "agency action" affecting

---

under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

him in a specific way, which is the basis of his entitlement for judicial review. *Id.* This "agency action" for the purposes of § 702 is set forth by 5 U.S.C. § 551(13) and is defined as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Second, the plaintiff must show that he has "suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute." *Lujan*, 497 U.S. at 883 (internal quotation marks omitted). These requirements apply to any waiver of sovereign immunity pursuant to § 702.

Section 702 also waives immunity for two distinct types of claims. It waives immunity for claims where a "person suffer[s] legal wrong because of agency action." 5 U.S.C. § 702. This type of waiver applies when judicial review is sought pursuant only to the general provisions of the APA. There must be "final agency action" in order for a court to conclude that there was a waiver of sovereign immunity pursuant to the first type of waiver in § 702. *Lujan*, 497 U.S. at 882 ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"). Both *Lujan* and our most applicable case, *Sierra Club*, applied specifically to situations where review was sought pursuant only to the general provisions of the APA. *See id.*; *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) (en banc).

Section 702 also waives immunity for claims where a person is "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. This type of waiver applies when judicial review is sought pursuant to a statutory or non-statutory cause of action that arises completely apart from the general provisions of the APA. *See Sheehan*, 619 F.2d at 1139; *Trudeau*, 456 F.3d at 187. There is no requirement of "finality"

for this type of waiver to apply. *See Trudeau*, 456 F.3d at 187. The requirement of "finality" comes from § 704 and has been read into § 702 in cases where review is sought pursuant only to the general provisions of the APA. *See Sierra Club*, 228 F.3d at 565; *Amer. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999). Instead, for this type of waiver there only needs to be "agency action" as set forth by 5 U.S.C. 551(13). *See Lujan*, 497 U.S. at 882.

This case is unique because the Tribe is asserting two separate types of claims—each falling under the different parts of § 702 described above. First, it is asserting a general challenge to the various agencies' actions pursuant to the APA (hereinafter "APA claims"). These claims are brought solely pursuant to the general provisions of the APA and specifically section 706. Second, the Tribe is asserting a claim for breach of fiduciary duty based on both federal common law and the Nonintercourse Act, 25 U.S.C. § 177, *et. seq.*[6] However, the distinction between these two claims is ultimately irrelevant to our decision. Because the Tribe fails to point to any identifiable "agency action"

---

[6] Although there is no direct cause of action under the Nonintercourse Act, *see Fed. Power Comm'n v. Tuscarora Indian Nation*, 362 U.S. 99, 123 (1960) ("25 U.S.C. § 177 does not apply to the United States itself . . . ."), we assume without deciding that the Nonintercourse Act creates a trust relationship between the Government and American Indian tribes with respect to tribal lands covered by the Act such that the Tribe would have an actionable breach of fiduciary duty claim based on this relationship. *See Tonkawa Tribe of Okla. v. Richards*, 75 F.3d 1039, 1044 (5th Cir. 1996) (stating that the Nonintercourse Act "imposes on the federal government a fiduciary duty to protect the lands covered by the Act" (citation omitted)); *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 56 (2d Cir. 1994) ("The [Nonintercourse] Act created a trust relationship between the federal government and American Indian tribes with respect to tribal lands covered by the Act."); *Joint Tribal Council of the Passamaquoddy Tribe v. Morton*, 528 F.2d 370, 379 (1st Cir. 1975) (stating that "the Nonintercourse Act imposes upon the federal government a fiduciary's role with respect to the protection of the lands of a tribe covered by the Act"); *see also Mohegan Tribe v. Connecticut*, 638 F.2d 612, 622 (2d Cir. 1981) (stating that through the Nonintercourse Act, "the federal government meant to take into its own hands the problems of intrusions upon Indian property wherever they might occur"). This claim would fall under the second type of waiver provided for by § 702.

within the meaning of § 702 for both claims, we hold that the Tribe has failed to prove that subject-matter jurisdiction exists for this lawsuit.[7]

The Supreme Court's decision in *Lujan* "announced a prohibition on programmatic challenges"—challenges that seek "wholesale improvement" of an agency's programs by court decree, rather than through Congress or the agency itself where such changes are normally made. *Sierra Club*, 228 F.3d at 566 (internal quotation marks and citation omitted). We agree with the district court that the Tribe's lawsuit is an impermissible programmatic challenge, and therefore, we lack jurisdiction over these claims. *See Lujan*, 497 U.S. at 890 (holding that the petitioners' challenge to the entirety of the "land withdrawal review program" is "not [a challenge to] an 'agency action' within the meaning of § 702, much less a 'final agency action' within the meaning of § 704"). The Tribe's complaint fails to point to any "identifiable action or event." *See id.* at 899. Instead, the complaint brings a challenge to the federal management of the natural resources on the land in question. The complaint contends only that all of the leases, permits, and sales administered by multiple federal agencies, including any ongoing action by these agencies that encroach on the Tribe's aboriginal title, are unlawful. These are allegations of past, ongoing, and future harms, seeking "wholesale improvement" and cover actions that have yet to occur. *See id.* at 891. Such allegations do not challenge specific "agency action." *See id.*

The Tribe's complaint is structured as a blanket challenge to *all* of the Government's actions with respect to *all* permits and leases granted for natural resource extraction on a significantly large amount of land covering several national parks in Texas. The fact that the Tribe is not seeking

---

[7] Because we hold that we lack subject-matter jurisdiction to consider the Tribe's claims, we need not address the Government's alternate basis for affirming the district court under the Quiet Title Act, 28 U.S.C. § 2409a.

wholesale reform of every single mineral permit, lease, or sale granted by these agencies but only those related to the lands on which the Tribe claims aboriginal title, does not diminish the scale of the relief sought by the Tribe. The challenge is to the way the Government administers these programs and not to a particular and identifiable action taken by the Government.

The Tribe argues that the complaint identifies a specific number of these permits and leases that have been issued, but this alone cannot save these claims. As the Tribe concedes, these numbers do not specifically identify the agency action nor is the Tribe contesting these specific actions.[8] Rather, the Tribe believes that it is entitled to discovery to learn what agency actions are currently pending. Such an argument is unavailing, especially given the fact that information regarding the Government's management of natural resources on public lands is readily available. *See, e.g.,* 36 C.F.R. § 9.52 (providing for public notice and inspection of documents related to oil and gas permits and leases in national forests). Even if the Tribe were to name some specific agency actions as examples of the agencies' alleged wrongdoing, it remains that the challenge is directed at the federal agencies' broad policies and practices—namely the agencies' failure to consider and accommodate the Tribe's aboriginal title and incidental rights. *See Lujan*, 497 U.S. at 891 (stating that ordinarily under the APA "the scope of the controversy" should be manageable in proportion and factually developed "by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him"); *Sierra Club*, 228 F.3d at 567 ("[T]he environmental groups [may not] . . . challenge an entire program by simply identifying specific allegedly-improper final agency actions within that program . . .").

---

[8] At oral argument, the Tribe stated that because under § 702 it can only seek prospective, injunctive relief, it was not challenging the past actions by the Government.

No. 13-40644

The Tribe also argues that it brings its APA claims pursuant to 5 U.S.C. § 706; however, this argument is undeveloped and unavailing. The Tribe asserts that § 706 provides that a reviewing court shall "hold unlawful and set aside agency action" that is "not in accordance with law." 5 U.S.C. § 706(2). However, the Tribe fails to explain how this makes the action "final" for purposes of the sovereign immunity waiver in § 702, and finality is necessary for this type of waiver to apply. *See Sierra Club*, 228 F.3d at 565. For example, the Tribe does not argue that this is a challenge to the agencies' failure to act, which in certain circumstances may be sufficiently final to make review appropriate. *See id.* at 568. Under these circumstances, the Tribe's argument is meritless.

The Tribe argues that at the very least its breach of fiduciary duty claim is sustainable because the district court erred in applying our precedent on the elements of the Nonintercourse Act.[9] However, we need not address the district court's decision on these grounds. The Tribe's breach of fiduciary duty claim is not sustainable for the same reason its APA claims are not sustainable—there is no subject-matter jurisdiction because the Tribe failed to allege "agency action" sufficient to trigger the sovereign immunity waiver from § 702.

**CONCLUSION**

For the aforementioned reasons only, we AFFIRM the district court's dismissal of this suit for lack of subject-matter jurisdiction. The Tribe has

---

[9] The Government argues that the Tribe failed to preserve this issue for appeal by failing to object on this ground to the MJ's report, and therefore, plain error review applies. *See, e.g., Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded on other grounds by* 28 U.S.C. § 636(b)(1). However, after conducting a thorough review of the record, we conclude that de novo review is appropriate because the Tribe did object to the MJ's report on this basis.

failed to allege "agency action" sufficient to meet the requirements of the sovereign immunity waiver in § 702, which is necessary to maintain its claims against the federal government and its agencies.