# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20567

United States Court of Appeals
Fif h Circuit

**FILED**
April 11, 2017

Lyle W. Cayce
Clerk

JOHN DOE,

> Plaintiff–Appellant,

v.

UNITED STATES OF AMERICA,

> Defendant–Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and JONES and OWEN, Circuit Judges.

OWEN, Circuit Judge:

John Doe filed suit against the United States in the Southern District of Texas, asserting that the Government violated his Fifth Amendment due process rights by accusing him of a crime during the course of a criminal proceeding in which he was not named a defendant. Doe sought a declaratory judgment that his Fifth Amendment rights had been violated, expungement of court records, and other forms of nonmonetary relief. The district court granted a motion to dismiss filed by the Government, holding that the action was barred by limitations. We affirm.

No. 16-20567

**I**

In 2008, the Government filed a Criminal Information (the Information), charging a defendant to whom we will refer as Roe under 18 U.S.C. § 371 with conspiracy to violate the Foreign Corrupt Practices Act (FCPA) and conspiracy to commit mail and wire fraud for actions that occurred while Roe was "an officer/or director of [ABC Corp.] and its successor company, [XYZ Corp.]"  As the basis of the mail and wire fraud count, the Government asserted that Roe and a "Consultant" engaged in a kickback scheme.  To effectuate this scheme, the Government alleged, Roe would cause ABC Corp. and XYZ Corp. to enter into consulting contracts with the Consultant or companies controlled by the Consultant; in return, the Consultant would pay a portion of his consulting fee to Roe.

In the course of explaining the kickback scheme, the Government noted that the Consultant

> was a citizen of the United States and a citizen of [a foreign country specifically identified].  From in or about 1977, until in or about 1988, [] Consultant was a salesperson employed by [ABC Corp.] responsible for [projects abroad].  In or about 1988, [] Consultant resigned from [ABC Corp.] and became a consultant to [ABC Corp.] and subsequently [XYZ Corp.], among other firms.  At various times after 1988, [] Consultant used corporate vehicles for his consulting business.

The Government identified two of the Consultant's corporate vehicles by name as, respectively, the "[First] Consulting Company" and the "[Second] Consulting Company" and specified the locations of projects—and in one case, the specific project—in which the Consultant allegedly participated in the kickback scheme.

Roe pleaded guilty to both conspiracy charges.  In the plea agreement, the Government described the factual basis for the guilty plea by largely reiterating the allegations in the Information.  However, the Government

2

specifically named one of the foreign projects to which it had previously referred more generally in the Information. During the plea hearing, the Government also noted that its "investigation is broad and [that] there are [other] potential defendants, targets, both here and abroad" and again referenced that the Consultant is "a dual U.S. and foreign national."

Doe maintains that the Government's description of the Consultant identified him "in all respects except by name" because "there are few contractors and customers that comprise" the particular industry in which he worked, and "no other person in the industry possesses these same personal and biographical characteristics." Doe alleges that his clients were able to identify him from this description, causing some clients to cease engaging Doe and his companies for consulting and ultimately costing him "many millions of dollars in consulting fees." He also asserts that he "was unable to obtain further consulting work[,] . . . which was a direct result of the prosecutor's public statements during the [Roe] plea hearing and elsewhere that the [Government's] investigation of the [] Consultant and others was 'ongoing.'"

Roe's sentencing did not occur until 2012. During the sentencing hearing, the Government explained the basis for its sentencing recommendation. In pertinent part, it stated that Roe's "involvement in a very substantial kickback scheme with another consultant in which he stole upwards of $11 million from [XYZ Corp.] is certainly something that factor[ed] into [its] recommendation." In response to the district court's question of whether the kickback scheme benefitted XYZ Corp., the Government noted that the scheme benefitted XYZ Corp. "in the sense that the consultants [sic] that [Roe] was working with was hired to engage in bid-rigging" and obtained projects for XYZ Corp. Doe claims that these references to the consultant involved in the kickback scheme triggered renewed interest from colleagues and former clients. He also alleges that, at this time, he experienced

difficulties conducting his financial affairs in his native country because authorities believed that Doe was the subject of a criminal investigation in the United States.

In 2015, Doe filed suit in the Southern District of Texas, contending that the Government violated his right to due process by publicly accusing him of a crime in a criminal proceeding without providing him a public forum for vindication. The relief he sought included: a declaration that the Government violated his Fifth Amendment right to due process; an order directing the Clerk of the Court to "obliterate and strike" all references to him from the publicly filed documents in Roe's criminal proceeding; and an order directing the Government to "obliterate and strike from the [Department of Justice] website, and from any other record available to the public, all references" to him in documents relating to or publicly filed in Roe's criminal proceeding.

The Government moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that sovereign immunity barred Doe's suit, and pursuant to Rule 12(b)(6), contending that on the face of the Complaint, Doe's action was barred by limitations. The district court concluded that sovereign immunity did not bar Doe's claim and, therefore, declined to dismiss for lack of subject-matter jurisdiction. But the district court held that Doe's claim for relief based on statements made in 2008 was time-barred by 28 U.S.C. § 2401(a).[1] The district court then considered the statements made by the prosecutor at the sentencing hearing in 2012 in isolation from those made in 2008 and held that Doe had not alleged a plausible due process violation. The statements at the sentencing hearing, the district court concluded, were devoid of "potentially identifying information" and furthered the Government's

---

[1] 28 U.S.C. § 2401(a) (providing, in pertinent part: "[e]xcept as provided by chapter 71 of title 41, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.").

legitimate interest in divulging the details of the case against Roe at sentencing. The district court determined *sua sponte* that efforts to amend Doe's complaint to set forth additional facts to support equitable tolling of limitations would be futile and dismissed the suit with prejudice. Doe appealed.

## II

The district court had jurisdiction under 28 U.S.C. § 1331 because Doe's claims arise under the Fifth Amendment and presented a federal question.[2] However, because Doe sued the United States, the district court lacked subject matter jurisdiction unless there has been a waiver of sovereign immunity.[3] "A waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'"[4] "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."[5] Whether the Government is entitled to sovereign immunity from suit presents a question of law that we review de novo.[6]

## A

In arguing that sovereign immunity is not implicated, Doe relies on *United States v. Briggs*, in which this court held that "[s]overeign immunity does not bar . . . relief" when an unindicted individual requests to have his or her name expunged after being accused of a crime in the indictment but is not

---

[2] 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

[3] *See, e.g.*, *United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'") (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

[4] *Id*. (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

[5] *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citing *United States v. Williams*, 514 U.S. 527, 531 (1995) (noting that in examining a purported waiver of sovereign immunity, the Court will "constru[e] ambiguities in favor of immunity")).

[6] *See Alabama–Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014).

No. 16-20567

provided a forum for vindication.[7] We concluded that a request to expunge "in the circumstances . . . presented" in *Briggs* is "no more subject to the defense of sovereign immunity than the filing of a bill of particulars or the raising of an objection . . . by the named defendants."[8]

The Government asserts that when 5 U.S.C. § 702, which is part of the Administrative Procedure Act (APA), was amended, Congress intended to preclude proceedings like those in *Briggs*. The current text of § 702 is set forth in the margin.[9] A 1976 amendment, enacted the year after *Briggs* was decided, added, in relevant part, the second sentence of § 702.[10] We discern no intent from the text of § 702 to foreclose a claim like that asserted in *Briggs* that is pursued in an ongoing criminal proceeding. The Government was already a party to the proceeding in *Briggs* because it had initiated the criminal prosecution.[11] Although it was alleged in *Briggs* that the Government had

---

[7] 514 F.2d 794, 795, 808 (5th Cir. 1975).

[8] *Id.* at 808.

[9] 5 U.S.C. § 702 provides:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. *An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.* The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought. (first emphasis added).

[10] *See* Act of Oct. 21, 1976, Pub.L. No. 94-574, 90 Stat. 2721 (1976).

[11] *See Briggs*, 514 F.2d at 797.

6

committed a constitutional violation, no relief was sought from the Government as a consequence.[12] The unindicted injured party invoked the court's authority to manage and expunge its own records. That did not implicate the Government's sovereign immunity from suit.

The decision in *Briggs*, as well as its progeny in our Circuit,[13] addressed a situation procedurally distinct from the present action. Doe has initiated a separate, civil action, "hal[ing] the federal government into a court proceeding"[14] as the named defendant. There is no ongoing criminal proceeding to which the Government is already a party, though the new action has been brought in the same court in which Roe was convicted, and Doe seeks expungement of those criminal court records, in addition to other forms of relief.

A court seemingly has the power to manage its records, even though the proceeding that generated those records has concluded.[15] A request for expungement or sealing of court records would not appear to implicate sovereign immunity, but we are not called upon to address that question in this case. Doe has directly sued the United States, and Doe seeks relief beyond expungement, including a declaration that the Government violated his Fifth Amendment rights when it accused him of a crime in the Roe criminal prosecution.

---

[12] *Id*. at 797, 808 (stating that the petitioners were "seeking entry of an order expunging the references to them in Count One of the indictment" and ordering that the Clerk provide this relief).

[13] *See United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685 (5th Cir. 2010); *In re Smith*, 656 F.2d 1101 (5th Cir. Unit A Sept. 1981).

[14] *Lewis v. Hunt*, 492 F.3d 565, 570 (5th Cir. 2007).

[15] *See generally Qureshi v. United States*, 600 F.3d 523, 525 (5th Cir. 2010) ("That the court loses jurisdiction over the litigation does not, however, deprive the district court of its inherent supervisory powers. After the termination of an action, a court may nevertheless 'consider collateral issues.'") (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990)).

No. 16-20567

Because the Government has been sued, subject matter jurisdiction is at issue, and we must resolve that issue "prior to addressing the merits" of any claims.[16] The Government moved to dismiss all of Doe's claims, asserting that they are barred by sovereign immunity and arguing that the only potential waiver of sovereign immunity is contained in 5 U.S.C. § 702. The Government contends that there has been no "agency action" within the meaning of 5 U.S.C. § 551(13), and that "agency action" as defined in § 551(13) is required in order for the waiver in § 702 to apply. The district court denied that motion but dismissed on the basis of limitations. However, if subject matter jurisdiction is lacking, this court must dismiss, without reaching the limitations issues.

As an initial matter, the Government does not contend that the Department of Justice (DOJ) is not an "agency." We note that 5 U.S.C. § 551 defines "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency," but it also lists a number of exclusions from the term "agency," including the courts of the United States and Congress.[17] The DOJ is not among these exclusions. A similar definition of "agency" and a similar list of exclusions appear in 5 U.S.C. § 701. The DOJ is listed as an "Executive department[]" in 5 U.S.C. § 101, and an "Executive department" is included as an "Executive agency" in 5 U.S.C. § 105. It therefore appears that the DOJ may be an agency with regard to certain acts or failures to act, though 5 U.S.C. § 701(a)(2) excludes from Chapter 7 of the APA "agency action [that] is committed to agency discretion by law."

Congress amended § 702 in 1976 to allow "[t]he United States [to] be named as a defendant" when nonmonetary relief is sought and the plaintiff's

---

[16] *See Alabama–Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014).

[17] 5 U.S.C. § 551(1)(A), (B).

claim is that "an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority."[18]   The intended effect of the amendment was to "broaden the avenues for judicial review of agency action by eliminating the defense of sovereign immunity in cases covered by the amendment."[19]

At least two Circuit Courts of Appeals have held that the second sentence of § 702 waives sovereign immunity for all actions seeking equitable, nonmonetary relief against an agency, even if there has been no "agency action" within the meaning of the APA.[20]   However, our court has held that sovereign immunity is not waived by § 702 unless there has been "agency action," as that term is defined in § 551(13).[21]   Agency action is statutorily defined to "include[] the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."[22]

Doe maintains that he has suffered a "sanction."   The Government asserts that it is not a "sanction" for a governmental agency to make

---

[18] 5 U.S.C. § 702.

[19] *Bowen v. Massachusetts*, 487 U.S. 879, 891-92 (1988).

[20] *See Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006) (holding that § 702's waiver of sovereign immunity applies even when there has been no "agency action," reasoning that the second sentence of that section "does not use either the term 'final agency action' or the term 'agency action' . . . . [n]or does the legislative history refer to either limitation" and concluding that declarations in the legislative history "make clear that no such limitations were intended"); *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989) (holding "[w]e cannot agree with the [Immigration and Naturalization Service] that § 702's wavier of sovereign immunity is limited to instances of 'agency action' as technically defined in § 551(13)"; concluding that "[n]othing in the language of the amendment [to § 702] suggests that the waiver of sovereign immunity is limited to claims challenging conduct falling in the narrow definition of 'agency action'"; and holding that "on its face, the 1976 amendment to § 702 waives sovereign immunity in all actions seeking relief from official misconduct except for money damages").

[21] *Alabama–Coushatta Tribe*, 757 F.3d at 489 ("Section 702 contains two separate requirements for establishing a waiver of sovereign immunity.   First the plaintiff must identify some 'agency action' affecting him in a specific way. . . . This 'agency action' for the purposes of § 702 is set forth by 5 U.S.C. § 551(13)." (citations omitted)).

[22] 5 U.S.C. § 551(13); *see id.* §701(b)(2) (providing that the term "agency action" "ha[s] the meaning[] given [it] by section 551").

statements that "allegedly harm a person's reputation or standing in the business community," citing a 1948 decision from the D.C. Circuit Court of Appeals.[23]    The D.C. Circuit has called that decision into question at least twice,[24] observing that "'an agency intent on penalizing a party through adverse publicity, especially false or unauthorized publicity, might well merit a review of its action' as a sanction."[25]

The term "sanction" is defined in 5 U.S.C. § 551(10),[26] and includes "withholding of relief."[27]    The definition of "agency action" includes "the equivalent or denial" of "relief."[28]    "[A]gency action" also includes "failure to act," and the Supreme Court has explained that "'failure to act,' is in our view properly understood as a failure to take an *agency action*—that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)."[29]    As noted, the definition of "agency action" in § 551(13) includes "relief." The term "relief" is defined in § 551(11)(A) to "include[] the whole or a part of an agency . . . (A) grant of . . . remedy."[30]    In accusing Doe of a crime without providing a public "forum in which [Doe could seek] to vindicate his rights,"[31] namely a hearing or trial in a criminal court proceeding in which Doe

---

[23] *See Hearst Radio, Inc. v. FCC*, 167 F.2d 225, 226-27 (D.C. Cir. 1948) (holding that the broad definition of "sanctions" in 5 U.S.C. § 551 did not include disparaging or false statements about the plaintiff in a Federal Communications Commission publication).

[24] *See Trudeau*, 456 F.3d at 189 ("We have twice questioned 'the continued validity of the *Hearst Radio* decision.'") (quoting *Impro Prods., Inc. v. Block*, 722 F.2d 845, 849 (D.C. Cir. 1983) and citing *Indus. Safety Equip. Ass'n, Inc. v. EPA*, 837 F.2d 1115, 1118 (D.C. Cir. 1988)).

[25] *Trudeau*, 456 F.3d at 189 (quoting *Indus. Safety Equip.*, 837 F.2d at 1119)).

[26] 5 U.S.C. § 551(10); *see id.* § 701(b)(2) (providing that the term "sanction" "ha[s] the meaning[] given [it] by section 551.").

[27] § 551(10)(B).

[28] § 551(13).

[29] *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004).

[30] 5 U.S.C. § 551(11)(C).

[31] *In re Smith*, 656 F.2d 1101, 1106 (5th Cir. Unit A Sept. 1981) ("[N]o legitimate governmental interest is served by an official public smear of an individual when that individual has not been provided a forum in which to vindicate his rights.").

No. 16-20567

could defend the serious charges against him, the Government failed to act and failed to provide relief or a remedy to Doe. It accused Doe of a crime without indicting him, without introducing evidence to prove the allegations, and without allowing Doe to challenge that evidence and present evidence of his own.

### III

The district court dismissed Doe's claims under Rule 12(b)(6), concluding they were facially barred by limitations,[32] and we review de novo a dismissal for failure to state a claim.[33] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[34] In making this determination, we may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[35]

The district court observed that our court has "not addressed which statute of limitations period applies to a due process claim seeking expungement of an accusation," and therefore "adopt[ed] the general statute of limitation provision of 28 U.S.C. § 2401(a), which provides that 'every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues.'"[36] Neither party has argued that this statute is inapplicable, and we will therefore assume, without deciding, that it governs all of Doe's claims.

---

[32] FED. R. CIV. P. 12(b)(6).

[33] *Haase v. Countrywide Home Loans, Inc.*, 748 F.3d 624, 630 (5th Cir. 2014).

[34] *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[35] *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).

[36] 28 U.S.C. § 2401(a).

No. 16-20567

The district court concluded that § 2401(a) barred relief for the statements made in the Information, the plea agreement, and the plea hearing, each of which occurred in 2008. We will affirm that decision only if "it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[37]

## A

Subject to limited exception, 28 U.S.C. § 2401(a) bars an action "unless the complaint is filed within six years after the right of action first accrues." "[I]t is 'the standard rule'" that a cause of action first accrues "when the plaintiff has a 'complete and present cause of action.'"[38] Stated another way, accrual occurs "when 'the plaintiff can file suit and obtain relief.'"[39]

Doe argues that he did not have a complete and present cause of action until he "was affirmatively denied a forum for vindication," that is, until either the Government notified him that he would not be indicted for his alleged involvement in the kickback scheme or the Government would be barred by limitations from prosecuting Doe for his alleged criminal activity. However, we have held that a Fifth Amendment claim seeking expungement of district court records was cognizable even though prosecution of the party seeking expungement might yet occur. In *In re Smith*, we ordered expungement despite noting that "[o]ur opinion will in no way interfere with any legitimate investigation" of the party who obtained expungement,[40] and in *United States*

---

[37] *Thompson v. Deutsche Bank Nat'l Tr. Co.*, 775 F.3d 298, 302 (5th Cir. 2014) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003)).

[38] *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

[39] *Id.* (quoting *Bay Area Laundry*, 522 U.S. at 201); *see also Herr v. U.S. Forest Serv.*, 803 F.3d 809, 818 (6th Cir. 2015) ("The limitations period in § 2401(a) begins to run when a party's 'right of action first accrues'–'as soon as (but not before) the person challenging the agency action can institute and maintain a suit in court.'" (quoting *Spannaus v. DOJ*, 824 F.2d 52, 56 (D.C. Cir. 1987))).

[40] 656 F.2d 1101, 1107 (5th Cir. Unit A Sept. 1981).

*v. Briggs*, we granted relief despite acknowledging the possibility of a later indictment.[41] Vindication of "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"[42] We note that, although the foregoing statement was made in a different context, the present case exemplifies the need for a claim such as Doe's to be brought at a meaningful time. The 2008 records that Doe seeks to expunge have been public for many years, and the harm to Doe commenced in 2008.

In cases like the present one, the accrual of a right to relief is not deferred until it is clear that no indictment will or can ever issue. The fact that the Government might have rendered the "extraordinary remedy of expungement"[43] unwarranted had it indicted Doe before he brought his claim[44] does not affect the accrual of such a claim. The statute of limitations is not deferred until the power to indict is legally beyond the Government's reach or the Government affirmatively states that it will not indict. Doe's claim that the Fifth Amendment was violated when "government charges [were] made with no opportunity to defend"[45] accrued when the Government purportedly accused him of criminal activity without indicting him.

---

[41] 514 F.2d 794, 799 (5th Cir. 1975) (noting that an acquittal of the alleged co-conspirators "does not bar later indictments against [the parties seeking relief]").

[42] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

[43] *Sealed Appellant v. Sealed Appellee*, 130 F.3d 695, 701 (5th Cir. 1997).

[44] *United States v. Int'l Harvester Co.*, 720 F.2d 418, 419 (5th Cir. 1983) ("We are persuaded that the trial court did not abuse its discretion [by refusing expungement] because the base principle of our expungement cases has not been violated, in that [the party seeking relief] can defend the charge in an earlier filed and related case in which he is a charged defendant."); *cf. Powell v. Florida*, 579 F.2d 324, 330 (5th Cir. 1978) (holding that a hearing that comports with due process can eliminate the availability of relief for an earlier due process violation); *see generally Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 232-33 (5th Cir. 1998) (Smith, J., dissenting) (explaining the "cure doctrine").

[45] *Int'l Harvester Co.*, 720 F.2d at 420.

No. 16-20567

## B

Doe argues that the due process violation is a "continuing" one, and that the statute of limitations should be equitably tolled until the Government "afford[s] the opportunity to contest the . . . criminal allegations against him." Although courts may equitably toll § 2401(a),[46] they do so "sparingly."[47] Discrete actions, even if "serial,"[48] "are not entitled to the shelter of the continuing violation doctrine."[49]

Generally, in determining if equitable tolling is appropriate, we focus the inquiry "on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights."[50] As we have explained above, when Doe was "named" as a criminal actor without being indicted, the harm occurred. Doe admits that there was "extensive publicity about the [Roe] guilty plea" and Doe asserts that he received calls from clients and colleagues "[i]mmediately" after the plea proceedings "ask[ing] about the [G]overnment's allegations that he had paid kickbacks to [Roe]." But even absent these effects, when "named," Doe's cause of action had accrued, and he could have initiated expungement proceedings. To the extent that Doe's failure to initiate suit within the limitations period was the result of his mistaken belief that he could not file suit because his claim had not yet accrued, a mistake of this nature does not provide a valid basis for tolling.[51] The continuing violation doctrine

---

[46] *Clymore v. United States*, 217 F.3d 370, 374 (5th Cir. 2000).

[47] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

[48] *Id.* at 114.

[49] *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003).

[50] *Messer v. Meno*, 130 F.3d 130, 135 (5th Cir. 1997) (quoting *Glass v. Petro–Tex Chem. Corp.*, 757 F.2d 1554, 1561 (5th Cir. 1985)).

[51] *Wion v. Quarterman*, 567 F.3d 146, 149 (5th Cir. 2009) ("[A] mistaken interpretation of the law is not a 'rare and exceptional circumstance' that justifies equitable tolling." (quoting *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999))).

14

is inapplicable.  The statute of limitations bars review of the statements made in 2008 as well as those in 2012.

## IV

The district court's dismissal of claims pertaining to the statements made by the prosecutor at the 2012 sentencing hearing can be affirmed on an additional basis.  For purposes of our review of the dismissal of the Complaint, we accept as true the allegation that the 2012 statements "spawned renewed focus on [Doe] and resulted in additional inquiries from former clients and colleagues . . . regarding whether he had been formally charged with [the] criminal offenses" described during the sentencing hearing and affected his ability to open bank accounts in his native country.

The Government provided information during the course of Roe's sentencing hearing to explain the nature of the offense and the reason for its sentencing recommendation.  The Government stated that Roe was "involve[d] in a very substantial kickback scheme with another consultant" to "distinguish[]" the sentence the Government was seeking from the sentences received by others involved in the scheme.  The second statement was that the kickback scheme benefitted XYZ Corp. "in the sense that the consultants [sic] that [Roe] was working with was hired to engage in bid-rigging" to obtain business for XYZ Corp.

The references to a "consultant" during the sentencing hearing contained minimal identifying information.  To the extent that Doe contends it was only in conjunction with the 2008 statements that the 2012 reference to a "consultant" made him identifiable, he seeks to expand the limitations period to include the 2008 statements.  That is impermissible.  We therefore consider only the 2012 references, standing alone, and conclude that references as nondescript as those to which Doe objects do not violate due process.  Doe has not alleged a plausible due process violation.

No. 16-20567

We do not reach the question of whether, when balancing the governmental interests against the rights of the individual,[52] the Government's interest in referring to a "consultant" for purposes of providing information about Roe to the sentencing court were paramount. We have discussed in other decisions circumstances that might permit the provision of identifying information, such as the need to identify an unindicted co-conspirator for purposes of Federal Rule of Evidence 801(d)(2)(E), and we have discussed measures that can be taken to shield the identity, and to protect the rights, of an unindicted coconspirator.[53] At a minimum, protective measures should have been employed in the Roe prosecution in 2008. But because Doe delayed more than six years to seek redress, limitations bars his complaint at this late date regarding identifying information that has been publicly available since 2008. It is only when the identifying information available since 2008 is considered that Doe has a plausible claim that he was "named" in 2012. The references in 2012 were not, in and of themselves, identifying.

## V

Although we ordinarily review the denial of leave to amend for abuse of discretion,[54] if the denial was predicated solely on futility, as here, "we apply a de novo standard of review identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6)."[55] Doe seeks leave "to articulate more specifically in an amended complaint the significance of sealed charges

---

[52] *See In re Smith*, 656 F.2d 1101, 1106 (5th Cir. Unit A Sept. 1981); *United States v. Briggs*, 514 F.2d 794, 804 (5th Cir. 1975) (observing that "due process requirements vary according to particular circumstances" and that "[t]he role the sovereign plays and the nature of the governmental interest are weighed against the harm or loss resulting to the individual").

[53] *See United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 688, 690-91 (5th Cir. 2010); *Smith*, 656 F.2d at 1105-07; *Briggs*, 514 F.2d at 804-06.

[54] *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004).

[55] *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010).

16

No. 16-20567

to his Due Process claim, and the role of any such charges in the equitable tolling of the limitations period." As we stated previously, the possibility of a future criminal proceeding did not prevent Doe from filing suit and obtaining relief, and the continuing violation doctrine is inapplicable. Articulating more specific facts to support these claims would be futile.

\* \* \*

For the foregoing reasons, we AFFIRM the district court's judgment dismissing Doe's case.