# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-30213

United States Court of Appeals
Fifth Circuit

**FILED**
January 21, 2020

Lyle W. Cayce
Clerk

STATE OF LOUISIANA,

Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, SMITH, and COSTA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The State of Louisiana sued the United States for injunctive relief alleging that the United States Army Corps of Engineers ("Corps") has failed to maintain the Gulf Intracoastal Waterway in compliance with the River and Harbor Improvements Act. The State asserts that the United States has waived its sovereign immunity for such a claim under the Administrative Procedure Act ("APA"), specifically 5 U.S.C. § 702, because the State has been "adversely affected or aggrieved by agency action within the meaning of a relevant statute." We conclude that the State fails to satisfy the requirements for the waiver of sovereign immunity under § 702 in that it does not challenge "agency action" and the State's alleged injury does not fall within the "zone of

interests" of the River and Harbor Improvements Act. We additionally hold that the State's "failure to act" claim is not subject to judicial review under the APA because the Corps is not legally required to preserve and/or maintain the Gulf Intracoastal Waterway at a certain width. Therefore, we AFFIRM the district court's judgment dismissing the State's complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.

## I. Background

In 1925 the United States Congress enacted the River and Harbor Improvements Act ("Act"), which authorized the construction of the Gulf Intracoastal Waterway ("Waterway"), 100 feet in width, from New Orleans to Galveston.[1] In 1942 Congress expanded the authorized width of the Waterway to 125 feet.[2] The United States, in furtherance of the Act's mandate, entered into a servitude agreement with Louisiana landowners, obtaining a servitude limited to 300 feet in width affecting property in Vermilion Parish. The State later acquired property known as White Lake Wetlands Conservation Area ("White Lake Property") in Vermilion Parish. The United States' servitude runs across a portion of the White Lake Property.

In its complaint,[3] the State alleges that the Corps has failed to confine the Waterway to the parcel of ground upon which it holds its servitude and that the Waterway now extends onto land owned by the State. The State asserts that jurisdiction is proper under § 702 of the APA because the loss of

---

[1] River & Harbor Improvements Act of 1925, Pub. L. No. 68-585, ch. 467, 43 Stat. 1186, 1187; H.R. Rep. No. 1122 (1925).

[2] Pub. L. No. 77-675, ch. 520, 56 Stat. 703, 703 (1942).

[3] The State's initial complaint asserted a claim against the United States under the Federal Tort Claims Act ("FTCA"). In response to the United States' motion to dismiss asserting that it had not waived its sovereign immunity under the FTCA, the State requested leave to amend its complaint to set forth claims under the Little Tucker Act and the APA. The district court granted the State leave to amend and denied the United States' motion to dismiss without prejudice to re-urge the motion later. In its amended complaint, at issue in this appeal, the State asserts a claim against the United States under the APA only.

No. 19-30213

its property "aris[es] from inaction on the part of the [Corps]" and a "continuing failure to act to rectify the physical encroachment in violation of Defendant's legal duties owed to Plaintiff." The State also asserts that jurisdiction is proper under § 702 because it "is not seeking monetary damages, rather injunctive relief." The State requests an injunction requiring abatement and removal of the encroachment, as well as restoration of the property to its prior condition.

In response to the State's complaint, the United States filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) based on its sovereign immunity. The United States asserted that in the absence of a waiver of its sovereign immunity, the district court lacked subject matter jurisdiction over a claim against it. The United States argued that although the APA provides a limited waiver of its sovereign immunity, express exceptions to the waiver found in § 704 of the APA deprived the district court of subject matter jurisdiction. Specifically, the United States contended that the State has an adequate remedy for an alleged breach of the servitude agreement under the Tucker Act in the Court of Federal Claims. The United States further argued that there has been no "final" agency action by the Corps.

The State responded by asserting that § 702 of the APA waives the United States' sovereign immunity where a person is "adversely affected or aggrieved by agency action within the meaning of a relevant statute" and seeks nonmonetary relief. The State argued that under that provision of the § 702 waiver, there is no requirement of "finality." It further contended that its claim arises from a "relevant statute," the River and Harbor Improvements Act ("Act") and its amendments, which allocated funds for and authorized the construction and maintenance of the Waterway. The State further contended that the Corps has failed to act on its responsibility to maintain the Waterway within the agreed-to and authorized parameters.

No. 19-30213

In reply, the United States argued that neither the Act nor its amendments provide the State with any statutory cause of action. The United States additionally asserted that neither the Act nor its amendments impose any affirmative obligation on the Corps with regard to the width of the Waterway. Furthermore, the United States contended that the State's interest did not fall within the "zone of interests" of the Act or its amendments. The United States finally maintained that "failure to act" claims implicate § 706(1) of the APA which provides that the "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." The United States asserted that because there is no statute or regulation requiring the Corps to maintain the Waterway as requested by the State, then it cannot be compelled to do so, and its sovereign immunity has not been waived under the APA.

The magistrate judge issued a report recommending that the United States' motion be granted. Over the State's objection, the district court adopted the report and recommendation and dismissed the State's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). The State timely appealed.

## II. DISCUSSION

This court reviews a district court's Rule 12(b)(1) dismissal for lack of subject matter jurisdiction de novo.[4] "Whether the United States is entitled to sovereign immunity is a question of law which this court reviews de novo."[5] The State contends that the United States has waived its sovereign immunity in this matter under § 702 of the APA. Section 702 of the APA "waives sovereign immunity for actions against federal government agencies, seeking

---

[4] *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 487 (5th Cir. 2014).
[5] *Id.* at 488.

4

nonmonetary relief, if the agency conduct is otherwise subject to judicial review."[6] Section 702, entitled "Right of review," provides:

> A person [1] suffering legal wrong because of agency action, or [2] adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed . . . on the ground that it is against the United States . . . .[7]

As explained by the Supreme Court in *Lujan v. National Wildlife Federation*,[8] § 702 of the APA contains two separate requirements. First, the person claiming a right to sue must identify some "agency action."[9] As defined by § 551(13) of the APA, "agency action" includes "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."[10] Second, the party seeking review under § 702 must show that he has suffered legal wrong because of the challenged agency action or that he has been "adversely affected or aggrieved" by the challenged agency action "within the meaning of a relevant statute."[11] The *Lujan* Court explained that "to be 'adversely affected or aggrieved . . . within the meaning' of a statute, the plaintiff must establish that the injury he complains of . . . falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint."[12]

---

[6] *Id.*

[7] 5 U.S.C. § 702.

[8] 497 U.S. 871 (1990).

[9] *Id.* at 882.

[10] 5 U.S.C. § 551(13).

[11] *Lujan*, 497 U.S. at 882.

[12] *Id.* at 883 (citation omitted). Although *Lujan* involved Article III standing under the APA, and not sovereign immunity, the Court's decision required interpretation of the same APA provisions at issue here.

No. 19-30213

As to the first requirement, the State fails to point to any identifiable "agency action" within the meaning of § 702. The State contends that the Corps "has failed to maintain, preserve, and repair the Waterway so as to not infringe on Louisiana's property rights." As noted by one of our sister circuits, however, the term "action" as used in the APA "is a term of art that does not include all conduct such as, for example, constructing a building, operating a program, or performing a contract."[13] Moreover, the agency action being challenged must be "circumscribed [and] discrete."[14] As this court has noted, in interpreting the APA, *Lujan* "announced a prohibition on programmatic challenges—challenges that seek wholesale improvement of an agency's programs by court decree, rather than through Congress or the agency itself where such changes are normally made."[15]

The State's allegations focus on decades of inaction by the Corps in failing to keep the Waterway from expanding beyond the width authorized by Congress in 1942. The State's "complaint fails to point to any identifiable action or event."[16] Consequently, the State has not satisfied the first requirement under § 702 of identifying specific agency action and, thus, fails to establish the United States has waived its sovereign immunity in this matter.[17]

We also conclude that the State has not established that it meets the second requirement under § 702 for a waiver of sovereign immunity, i.e., that

---

[13] *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013).

[14] *Id.* at 194 (internal quotation marks and citation omitted).

[15] *Alabama-Coushatta Tribe*, 757 F.3d at 490 (internal quotation marks and citation omitted).

[16] *Id.* (internal quotation marks and citation omitted).

[17] *Id.* at 490–91 (holding that plaintiff failed to point to "any identifiable 'agency action' within the meaning of § 702" because complaint brought "a challenge to the federal management of the natural resources on the land in question" and "not to a particular and identifiable action taken by the Government").

No. 19-30213

it has been adversely affected and aggrieved within the meaning of a relevant statute. As stated by the *Lujan* Court, to satisfy this requirement "the plaintiff must establish that the injury he complains of . . . falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint."[18] Louisiana asserts that it has been adversely affected and aggrieved within the meaning of a "relevant statute"— the River and Harbor Improvements Act—because the Act (and its amendment) provided for a width of 125 feet. Under the *Lujan* Court's explanation of § 702's "adversely affected" clause, however, Louisiana must establish that the encroachment of its land "falls within the 'zone of interests' sought to be protected by" the Act.[19]

Review of the legislative history of the River and Harbor Improvements Act and its amendment indicate that the purpose of the construction of the Waterway was to promote commerce, and the purpose of the amendment expanding the Waterway was to facilitate the transport of materials and supplies for the military during World War II. Specifically, the Act provided as an explanation for its enactment that "the railroads of the country are unable to carry all of its commerce and we can only provide for transportation of all the shipments offered by utilizing our waterways."[20] The amendment to the Act providing for the enlargement of the Waterway states that it was enacted "to promote the national defense and to promptly facilitate and protect the transport of materials and supplies needful to the Military Establishment."[21] This language indicates that the delineation of the Waterway to a width of 125 feet was motivated by the need for commerce on a

---

[18] *Lujan*, 497 U.S. at 883 (citation omitted).
[19] *Id.* (citation omitted).
[20] H.R. Rep. No. 68-1122, at 1 (statement of Rep. Dempsey).
[21] 56 Stat. at 703.

national scale. The interests of the landowners surrounding the Waterway do not appear to have been within the Act's "zone of interests."[22] Based on the foregoing, we conclude that the State has not met its burden of establishing that § 702 of the APA provides for a waiver of the United States' sovereign immunity.[23]

In its reply brief and at oral argument, the State insists that it is not making a programmatic challenge to the Corps' maintenance of the Waterway. Instead, the State asserts that it is challenging the Corps' failure to act in a discrete way and seeks to compel the Corps to act in accordance with law. The State asserts that the Corps should be made to carry out "its basic duty to maintain the [Waterway] banks in the White Lake area, and prevent erosion— a legally required discrete action." Specifically, the State contends that under 33 U.S.C. § 426i of the Act, the Corps has a discrete duty to maintain and repair the Waterway within the specified dimensions and to repair shoreline erosion in the White Lake area. As described below, however, such an argument implicates a different section of the APA, § 706(1), which also has requirements for judicial review the State fails to satisfy.

As explained by the Supreme Court in *Norton v. Southern Utah Wilderness Alliance*, the APA places limits on "judicial review of agency

---

[22] Moreover, the only case the State points to regarding the Act's "zone of interests" is a district court case which determined that a particular provision of the Act "was enacted for the benefit of *vessels*, and with respect to passengers and crews of vessels, as opposed to the general public." *See Cruise Lines Int'l Ass'n Alaska v. City and Borough of Juneau,* 356 F.Supp.3d 831, 847 (D. Alaska 2018) (emphasis added).

[23] Although the State relies heavily on *Weyerhaeuser Co. v. United States Fish and Wildlife Service*, 139 S. Ct. 361 (2018), it was not disputed in that case that there was agency action. The Supreme Court instead addressed a provision that excludes from APA review "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). That APA provision is not at issue here. As we have determined, the State has failed at the threshold requirement of showing agency action.

inaction."[24]  "Failures to act are sometimes remediable under the APA, but not always."[25]  The APA provides relief for a "failure to act" in § 706(1), which provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed."  After examining the definition of agency action under § 551(13) of the APA and noting that the definition includes a "failure to act," the *Norton* Court determined that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."[26]  This "required-action" limitation "rules out judicial direction of even discrete agency action that is not demanded by law."[27]

Although the River and Harbor Improvements Act authorized a width of 125 feet for construction of the Waterway, no provision of the Act *requires* the Corps to maintain the Waterway at that width.  The State contends that under 33 U.S.C. § 426i of the Act, the Corps has a discrete duty to maintain and repair the Waterway within the specified dimensions and to repair shoreline erosion in the White Lake area.  Contrary to the State's contentions, the statute imposes no such obligation on the Corps.  Specifically, § 426i authorizes the Corps "to investigate, study, plan, and implement structural and nonstructural measures for the prevention or mitigation of shore damages attributable to . . . [the] Waterway, if a non-Federal public body agrees to operate and maintain such measures . . . ."[28]

The plain language of § 426i authorizes the Corps to take measures to prevent or mitigate shore damage caused by the Waterway; it does *not direct* the Corps to take such measures.  Moreover, even if the Corps exercises its

---

[24] 542 U.S. 55, 61 (2004).
[25] *Id.*
[26] *Id.* at 64.
[27] *Id.* at 65.
[28] 33 U.S.C. § 426i(a).

discretionary authority to act pursuant to § 426i, the statute facially places the duty of operating and maintaining any preventative or mitigative measures not on the Corps, but on the non-Federal public body that agrees to operate and maintain those measures. In sum, the State's argument that the Corps' inaction is subject to judicial review under the APA has no merit.

## III.  Conclusion

Based on the foregoing, we hold that the United States has not waived its sovereign immunity under the APA from the State's claims in this matter. Accordingly, the district court's judgment dismissing the State's complaint for lack of subject matter jurisdiction under Rule 12(b)(1) is AFFIRMED.